Rockingham, }
June 29, 1905. }

### HETT & a. v. PORTSMOUTH & a.

Where a municipality has adopted a system of permanent paving in accordance with the recommendation of a committee appointed to investigate the subject, a subsequent appropriation of money by the city councils for "permanent street improvements" is not so indefinite as to amount to an attempted delegation of legislative power to the executive officers entrusted with the expenditure of the funds.

An authorized contract which has been irregularly entered into in behalf of a city becomes valid and binding upon its formal adoption by a vote of the board of mayor and aldermen.

Where a resolution of city councils designates the source from which an appropriation is derived, its expenditure is not rendered illegal by the fact that the identical money was not set aside for the specified purpose.

BILL IN EQUITY, praying that the passage of a certain joint resolution by the city councils of Portsmouth be declared null and void, that a contract between the city and the Barber Asphalt Paving Company be cancelled, and that any action under the contract be enjoined. The plaintiffs are taxpayers in Portsmouth, and the defendants are the city, the Barber Asphalt Paving Company, and the members of a committee of the city councils. Facts found, and case transferred from the January term, 1905, of the superior court, by *Wallace*, C. J.

In 1903, a committee appointed by the city to investigate the question of the permanent improvement of its streets reported in favor of a plan for permanent streets paved with asphalt. An appropriation for such paving was thereupon made, the Barber Asphalt Paving Company was employed to lay the same, and the work was satisfactorily performed on some of the streets of the city. August 1, 1904, the city received $17,231.37 on account of liquor licenses. The city treasurer put the money with other funds of the city and used it to pay current bills. By September 1, it had all been expended. It was not appropriated by any vote of the city, except by the resolution hereinafter set forth.

September 1, 1904, the common council of the city passed the following: "Joint resolution providing for permanent street improvements. *Whereas* the city is in receipt each year of certain income from the state on account of liquor licenses, and the amount this year being about seventeen thousand dollars, therefore, *Be it resolved by the city councils of the city of Portsmouth*, as follows: That said amount of money thus received be set aside and expended for permanent street improvements, and that a com-

mittee of two councilmen and two aldermen be appointed by the chair of each body to take all necessary steps toward the permanent improvement of streets and report their doings to the city councils." September 22, this resolution was passed at a meeting of the board of mayor and aldermen, and the committee provided for therein was appointed the following day. The committee met September 24 and executed a contract in the name of the city of Portsmouth with the Barber Asphalt Paving Company, by which the corporation agreed to lay 7,000 square yards of asphalt paving on certain streets of the city at a stipulated price. At a regular meeting of the board of mayor and aldermen, held October 13, 1904, a resolution was passed to ratify, confirm, and adopt the contract made by the committee.

Work on the paving was begun immediately after the execution of the contract and continued until October 4, when a temporary injunction was granted against the payment of any money under the contract, and the Barber Company thereupon ceased operations. The court ruled that the contract was valid and binding and ordered that the temporary injunction be dissolved, and the plaintiffs excepted.

*Samuel W. Emery*, for the plaintiffs.

*Page & Bartlett* and *Ernest L. Guptill*, for the defendants.

WALKER, J. The city councils by concurrent vote regularly appropriated a sum of money for "permanent street improvements." It is claimed that this object is so indefinite as to amount to an attempted delegation of legislative power to the executive officers whose duty it might be to expend the money. If it is conceded that the expression, standing alone, and unexplained or unlimited by extraneous evidence, might include a great variety of public highway enterprises, the kind, locality, and extent of which would require the exercise of that degree of deliberation and judgment which is vested in the governing body, the question remains whether the circumstances attending the vote do not sufficiently limit the general scope of the language used. What was the intention of the members of the city council passing the vote, when ascertained from a consideration of all the competent evidence? What did they understand was included in the expression "permanent street improvements"? The facts that the city had in 1903 adopted a policy of making permanent improvements in the road-bed of the streets, as contradistinguished from temporary repairs, by using asphalt paving, that after an investigation of the subject the city had appropriated money for asphalt paving, and

that a considerable amount of that paving was laid, proving to be satisfactory, constitute evidence showing that work of that character upon the streets was included in the title to the joint resolution of 1904 and in the body thereof. That such was the intention of the city councils can admit of little doubt under the circumstances, while such a purpose is not inconsistent with the language used. It is therefore unnecessary to inquire whether other highway improvements might not be called permanent.

As the city councils had legally voted an appropriation for repairing the streets (*Hall* v. *Concord*, 71 N. H. 367, 371) by using asphalt paving, the duty of carrying the vote into practical effect devolved upon the board of mayor and aldermen. In the absence of special legislation upon the subject, they have the powers of selectmen in towns in this respect. P. S., c. 46, s. 2; *Ib.*, c. 48, s. 14; Laws 1899, c. 29, s. 3. If the appointment of a special committee to provide for the doing of the work was illegal, the contract which they attempted to make in behalf of the city was afterward ratified by a formal vote of the board of mayor and aldermen; and since it was within the power of that body to make it in the first instance, it became valid and binding upon their adoption of it. *School District* v. *Gilman*, 3 N. H. 168; *Monadnock R. R.* v. *Peterborough*, 49 N. H. 281; *Hitchcock* v. *Galveston*, 96 U. S. 341, 348, 349.

The fact that the joint resolution provided that the special committee should "report their doings to the city councils" is immaterial upon the question of the validity of the contract which was one of the things they did, and which, if invalid when made, was validated afterward by ratification.

The appropriation of the license money amounting to about $17,000 for street improvements was legal. That it was designated as license money is unimportant, except as indicating the source from which it was derived and the amount of the appropriation. There is no sound reason for the claim that the identical money should have been kept on hand, or that the contractor was bound to see that after it had been legally appropriated for one purpose it had not been in fact used for other purposes. His rights under his contract do not depend upon a mere matter of formal bookkeeping by the city treasurer.

*Exceptions overruled.*

All concurred.