(November 10, 1909.)

H. K. MOORE, C. B. GREEN and GEORGE WEBER, Respondents, v. J. M. HUPP and the CITY OF MOSCOW, a Municipal Corporation, Appellants.

[105 Pac. 209.]

CITIES—AUTHORITY TO APPOINT POLICEMEN—RATIFICATION.

1. Under the provisions of sec. 2186, Rev. Codes, the mayor of a city is authorized to appoint policemen, by and with the consent of the council; and under the provisions of the statute this is the only method by which policemen of a city can be appointed.

2. Under the provisions of sec. 2190, Rev. Codes, in which "The mayor . . . . shall have the superintending control of all the officers and affairs of the city, and shall take care that the ordinances of the city and of this title are complied with," such language is not sufficient to give the mayor authority to appoint policemen upon his own motion or in a manner other than that provided in sec. 2186, Rev. Codes.

3. Where the mayor of a city authorizes a person to select detectives or policemen to act for and on behalf of the city, and such persons are so selected and serve in such capacity and are paid by such person, who thereafter presents a claim against the city for the money so expended; and the city council allows such claim and orders and directs that a warrant issue in payment therefor, the acts of the council are a ratification of the mayor's

acts in authorizing the selection of such person to act for and on behalf of the city, and the · expense thereby incurred becomes a city charge, which the city is authorized to pay. (Stewart, J., dissents.)

4. Where an application is made for an injunction, and the complaint is defectively verified, and the defendants thereafter appear and file an answer and join issue, and a hearing is had upon such application without any objection to the sufficiency of the verification of such complaint, *held*, that the sufficiency of the verification is waived by the conduct of the parties.

5. A resident taxpayer of a city is a real party in interest, and may maintain an action to enjoin the payment of claims by the city, alleged to be illegal, notwithstanding the fact that such taxpayer is authorized to act for and on behalf of a citizens' league composed of many persons, resident taxpayers of said city.

(Syllabus by the court.)

APPEAL from the District Court of the Second Judicial District, for Latah County. Hon. Edgar C. Steele, Judge.

An action to enjoin the payment of an alleged illegal claim by a city. Temporary injunction granted. Defendant appeals. *Reversed.*

William Stillinger, and Nisbet & Besly, for Appellants.

The detectives were employed in such a manner as to create a legal claim which the city could pay. (*Rice v. Gwinn,* 5 Ida. 394, 49 Pac. 412.) Under the existing circumstances of this particular case, it would hardly seem reasonable that this money expended by the mayor in the performance of his official duty should not be a legal charge against the town. (28 Cyc. 454.)

The constitution of the state of Idaho by granting the right to the city to make said ordinance also granted unto the city the right to use such means as the city might deem necessary to enforce the same. (8 Cyc. 741.) The regulation of police matters by a city and the manner of the enforcement thereof is left entirely with the city, and the legislature of the state has been vested with no power by the constitution to interfere therewith. (*Ex parte Murphy,* 8 Cal. App. 440, 97 Pac. 199; *Gale v. City of Moscow,* 15 Ida. 332, 97 Pac. 828; *State v. Quong,* 8 Ida. 191, 67 Pac. 491.)

Geo. G. Pickett, Morgan & Morgan, and Warren Truitt, for Respondents.

A municipality, as a governmental agency, acting and bound always to act as trustee of the powers delegated to it, may not, by contract, license, or by law surrender or restrict any portion of the police power conferred upon it. (28 Cyc. 643, 696; *Walsh v. City of Denver,* 11 Colo. App. 523, 53 Pac. 458; Cooley's Const. Lim., p. 249.) Although the nominal and official head of the municipality, the mayor has no power to bind the corporation by written or oral contract or representation, unless he has been duly thereunto authorized by the governing body or by the state. (28 Cyc. 647; Cooley's Const. Lim., p. 234.)

"A taxpayer may enjoin any board or body from entering into a contract or doing any act not authorized by law, which might result in the creation of a public burden." (*Water, Light & Gas Co. v. Hutchinson etc. Ry. Co.,* 74 Kan. 661, 87 Pac. 883; *Brummitt v. Ogden Waterworks,* 33 Utah, 289, 93 Pac. 831.) There is no law in the state of Idaho giving to municipal corporations the power to hire or maintain a detective force, in addition to its police force. (*People v. Supervisors,* 28 How. Pr. (N. Y.) 22.)

STEWART, J.—On December 7, 1908, there was filed with the clerk of the city of Moscow the following claim:

"Moscow, Idaho, Dec. 7, '08.

"City of Moscow, to John M. Hupp, Dr., P. O. Moscow.

"To money advanced to the Bell Church Secret Service for work in the city of Moscow...................$170 00."

This claim was O. K.'d by the mayor and L. A. Manring and L. H. Collins, councilmen of said city, and was indorsed as follows:

"No. 1,274.

    vs.

J. M. Hupp.

"City of Moscow, $170.00. General Fund. Filed Dec. 7, 1908. J. R. Strong, Clerk. By ————, Deputy. Ex-

amined and allowed in the sum of ———— on the ——— day of ————, 190—. Chairman Finance Committee.''

On the same day, at the regular monthly meeting in December, the mayor and city council of said city ordered that the city clerk of said city, and in accordance with said order said city clerk did on December 7, 1908, make and issue a city warrant of the city of Moscow, drawn on the general fund of the city of Moscow, Idaho, payable to the order of J. M. Hupp for the sum of $170. This warrant was signed by R. S. Matthews, as mayor of the city of Moscow, and attested by the clerk and issued under the seal of said city, and delivered to John M. Hupp, who on December 12, 1908, presented the same to L. A. Torsen, city treasurer, for payment, and upon presentation to said treasurer the same was by him duly registered in the book of register of warrants of the city of Moscow and indorsed ''not paid for want of funds.''

This action was brought by the plaintiffs, alleging themselves to be citizens and taxpayers within said city, and against the defendants, J. M. Hupp, the city of Moscow, Idaho, a municipal corporation, L. A. Torsen, city treasurer of the city of Moscow, Idaho; and L. A. Manring, L. H. Collins, W. J. Graham, H. K. Strong, J. H. Horton and J. Theodore Johnson, city councilmen of the city of Moscow, Idaho, and R. S. Matthews, mayor of the city of Moscow, to enjoin the payment of said warrant.

The complaint, in substance, alleges that such claim was not a just, legal or equitable account against the city of Moscow, and was not an ordinary or necessary expense of municipal indebtedness; that the same is illegal for the reason that said claim was made by J. M. Hupp upon his sole and personal responsibility in the hiring and retaining of certain detectives to come from the city of Spokane, Washington, to Moscow, Idaho, to look into, inquire and watch the individual actions and conduct of certain individuals in the city of Moscow, and that in the hiring and procuring of such services said Hupp, on his own responsibility, personally promised and agreed to the parties so hired that he (Hupp) would personally pay such detective or detectives for their work and services; and that the city of Moscow never at any time or at all authorized

or empowered, nor could the city of Moscow empower the said defendant, John M. Hupp, to procure the services of such detective or any detectives, or to contract with any detective or detectives for or on behalf of the city of Moscow; that said Hupp never at any time received from the city council of the city of Moscow any authority or power to loan or advance money for or on behalf of the city council or the city in the sum of $170 or any other sum to the Bell Church Secret Service for detective work; that there was never passed or approved any ordinance of the city council of the city, authorizing or empowering the defendant Hupp or any person to pay out or expend moneys or money in any sum whatever in the employment, retaining or procuring the services of detectives. These allegations, in substance, are the basis upon which this action is founded.

Upon the filing of this complaint, notice was given of the intention of the plaintiffs to apply to the judge of the district court for a restraining order *pendente lite* restraining the defendants from enforcing the payment of said warrant. An answer was filed by R. S. Matthews, mayor, upon behalf of himself and the other defendants, which put in issue the legality of the claim set forth in the plaintiffs' complaint and the warrant issued in payment therefor. Affidavits were filed on behalf of the plaintiffs and the defendants, and the application for a temporary restraining order came on to be heard before the judge of the district court; and on March 3d, a temporary restraining order was issued in said cause, restraining the defendants from paying out any moneys or collecting or enforcing the payment of said warrant. This appeal is from the order of the court issuing said temporary restraining order.

There is no substantial conflict in the material evidence contained in the affidavits filed on behalf of the plaintiffs and the defendant. It appears that the city council of the city of Moscow passed an ordinance prohibiting the sale of intoxicating liquors within said city, and that to aid the enforcement of such ordinance the mayor of said city directed J. M. Hupp to employ detectives to gather evidence and aid in the

enforcement of such ordinance, and that Hupp acted upon this authority and employed two detectives, and paid such detectives for their services the sum of $170, and afterward presented the bill heretofore referred to and in payment of which the warrant involved in this case was issued. It further appears that the city council of the city of Moscow never passed any ordinance authorizing the mayor or J. M. Hupp to contract this indebtedness, and never passed any ordinance authorizing the expenditure of any money for detective services, or in any way authorized anyone to expend any money upon behalf of the city for such services. It further appears, however, that upon the bill of J. M. Hupp being presented to the city council for such services, the city council authorized the allowance of such claim and directed the issuance of the warrant involved in this case.

The first question presented by the record is: Did the mayor of the city of Moscow have authority to authorize the defendant Hupp to engage detectives to serve the city, and did the expenditure of money by Hupp, under such authorization, create an indebtedness which the city was authorized to pay? The statute, providing for the organization and government of cities and villages, clearly defines the power and jurisdiction vested in the mayor, and under the provisions of sec. 2190, Rev. Codes, it is among other things provided:

"The mayor shall . . . . have the superintending control of all the officers and affairs of the city, and shall take care that the ordinances of the city and of this title are complied with."

Under this language and the power thus conferred upon the mayor, counsel for appellant contends that the mayor is thereby vested with authority to employ detectives or authorize the employment of such detectives, and incur an indebtedness which the city is authorized and obligated to pay; and it is by reason of this authority that the appellant contends in this case that the mayor of Moscow had authority to authorize Mr. Hupp, the appellant, to engage detectives upon behalf and for the city, and to pay such detectives. It may be stated, as a general proposition of law, that the gen-

eral rule applicable to the power of an agent to bind its principal does not apply to the acts of officers of a municipal corporation, and that the authority of public officials is thereby regarded as special and not general, and that such officers have only such powers and can perform only such duties as are expressly given and authorized by the charter of the municipality and ordinances passed by such city, under the authority of the city charter. (1 Abbott on Munic. Corp., secs. 260, 275; 1 Dillon Munic. Corp., sec. 445.)

Sec. 2186 of the Rev. Codes enumerates the elective and appointive officers of the city, and by the provisions of this section the mayor is authorized by and with the consent of the council to appoint such number of regular policemen as shall be necessary, and special policemen from time to time as exigencies arise, and the police officers so appointed by the mayor and council shall be removed at any time by the mayor.

It will be observed that this section authorizes the mayor to appoint regular and special policemen by and with the consent of the council. The statute does not regulate the number or compensation of policemen, and this matter is necessarily left to the regulation of the city council by proper ordinance. We are not advised in this case of what ordinances the city of Moscow may have passed with reference to the employment of policemen or detectives, or whether the city has legislated at all upon this subject; but in any event the special power given to the mayor to appoint policemen under this statute must be exercised in accordance with the statute—that is, the mayor is only given power to appoint policemen by and with the consent of the council. In the case under consideration there is no evidence whatever—and in fact the reverse does appear—that the detectives employed by Mr. Hupp were ever appointed as policemen or detectives by the mayor by and with the consent of the council, or by the mayor independent of the council.

The facts as they appear in the record show that the mayor personally authorized Mr. Hupp to employ such detectives, but no appointment was ever made by either the mayor or council of such persons as detectives or policemen of said city. The mayor of the city has only such power as has been or may

be conferred upon him by the laws of the state and the ordinances of the city.  (28 Cyc. 647.)

It appears in this case that the mayor, as such, was not authorized to appoint policemen or detectives, either by the statute or by the ordinances of said city, unless the fact that he was given general control over the affairs of the city and its officers authorized and granted to the mayor such power. The employment of policemen or detectives necessarily implies the making of a contract upon behalf of the city and the creation of an indebtedness against the city.  If the mayor has power to employ policemen and detectives whenever he sees fit, without authorization from the council or without asking for their confirmation, and such right and power is claimed by the mayor by virtue of the duty imposed upon him by statute to superintend and control the affairs of the city and its officers, then under the same pretense and authority the mayor can make any contract with reference to the affairs of the city or the conduct of any officer, and thus ignore and displace the authority vested in the city council by the laws of the state.  The general power to superintend and control the affairs of the city was not intended to confer upon the mayor such power, and in exercising his power it must be done in accordance with the provisions of the statute.

Sec. 2192, Rev. Codes, makes it the duty of the mayor, from time to time, to communicate to the city council such information and recommend such measures as in his opinion may tend to the improvement of the finances of the city, the police, health, security, ornament, comfort, and general prosperity of the city.  Thus under the provisions of this statute, if the mayor of the city deem it necessary to employ special policemen or detectives, it is made his duty to communicate such fact to the city council, and the city council given an opportunity to pass upon the question as to whether or not such authority should be exercised by the mayor, and the expense incurred.  If this be not true, then the mayor of the city would become the entire city government and the necessity for a city council would not exist.

Counsel for appellant, however, argue that if it is necessary to communicate to the city council the necessity for policemen

or detectives, or that the city council pass an ordinance conferring upon the mayor the power to appoint, then by such acts the objects and purposes for which policemen or detectives are to be employed would be defeated, for the reason that by such acts the public would be advised, and the violators of the law, whom it is sought to bring to account, would receive the information of the intended purpose and acts of the mayor and the city. This, however, is not a reason why the mayor of a city can exercise authority and power not conferred upon him by law. The mayor of a city is a creature of the statute. His powers and duties are fixed by the statute and the ordinances of the city, and he must act in accordance therewith; and if the ordinances are unwise, he can so advise the council and ask that they pass other ordinances by which the subject matter may be covered in accordance with his suggestions. The statute of this state expressly confers upon the city council the right to legislate for and on behalf of the city, and such power is nowhere vested in the mayor except by virtue of his veto power. It, however, would not necessarily follow that by passing an ordinance, authorizing the employment of special policemen or detectives, information would be communicated to the law-breaker of the intended purpose and object of the city, for in such ordinance it would not be necessary to specifically call attention to the particular act sought to be punished or the person whom it was thought had violated the law.

We see no reason why a general ordinance might not be passed authorizing the mayor to appoint policemen and detectives when, in his judgment, the exigencies arise. Or a general ordinance might be passed conferring the authority generally upon the mayor to make such appointments. The object then urged by counsel as to publicity would not defeat the objects and purposes for which such appointments were made.

In the absence of an ordinance conferring such power upon the mayor we are unable to construe the language found in sec. 2190 as broad enough to give to the mayor the power to enter into contracts for and on behalf of the city, in the exercise of his general supervision over the affairs of such

city. To construe this language as giving to the mayor such power would be substituting the will and caprice of a mayor for the legislative body of the city, and in effect would nullify, abrogate and ignore any and all provisions of the ordinances of the city enacted by the city council. (*Hampton v. Board of Commrs. of Logan Co.*, 4 Ida. 646, 43 Pac. 324, 28 Cyc. 647; 1 Dillon Munic. Corp., sec. 447.) But in this case it does not appear that the mayor appointed the detectives as policemen, for which the defendant Hupp claims to have expended money, or that such persons ever became employees of the city. All that is claimed is that the mayor authorized the defendant Hupp to employ detectives. He employed the detectives and paid them, and presents his bill against the city for the money thus expended. In order for the defendant Hupp to recover, there must arise out of the facts and the law an implied contract on the part of the city to pay for the services rendered. As we have seen, however, the mayor of the city had no authority to make such a contract, and had no authority to authorize the defendant Hupp to expend the funds of the city. In further support of this defendant's claim it is argued, however, that even though the statutes and ordinances of the city were not strictly complied with in the incurring of such indebtedness, yet the fact that a claim was presented against the city for such services and was allowed by the city council and ordered paid, and a warrant drawn in payment of the same, amounts to a ratification, on the part of the city, of the acts of the mayor and the method of contracting such indebtedness, and makes the same a valid obligation of the city.

As above shown, the statute clearly authorizes the mayor to appoint policemen, regular and special, with the consent of the city council. Had the mayor, therefore, in the first instance appointed such persons as policemen and submitted such appointment to the city council, and they had ratified the same, then there could have been no question but that such persons could have recovered from the city the compensation agreed upon or fixed by ordinance for the services

rendered. In other words, the appointment, if thus made, would have been made in the manner prescribed by law.

In the case of *Zottman v. San Francisco*, 20 Cal. 97, 81 Am. Dec. 96, in discussing the question of ratification, Chief Justice Field, speaking for the supreme court of that state, says:

"Ratification is equivalent to a previous authority; it operates upon the contract in the same manner as though the authority to make the contract had existed originally. The power to ratify, therefore, necessarily supposes the power to make the contract in the first instance; and a power to ratify in a given mode supposes the power to contract in the same way. Therefore, where the charter of a city authorizes a sale of city property only at public auction, a sale not thus made is from its very nature incapable of ratification, because it could not have been otherwise made originally. So where the charter authorizes a contract for work to be given only to the lowest bidder, after notice of the contemplated work in the public journals, a contract made in any other way—that is, given to any other person than such lowest bidder—cannot be subsequently affirmed. Were this not so, the corporate authorities would be able to do retroactively what they are prohibited from doing originally. We had occasion, in the case of *McCracken v. City of San Francisco*, to give to this subject great consideration, and we there held that where authority to do a particular act can only be exercised in a particular form or mode, the ratification must follow such form or mode, and that a ratification can only be made when the principal possesses at the time power to do the act ratified."

This case has been cited many times with approval, and, as I view it, lays down the correct principle. (*People v. Swift*, 31 Cal. 26; *Chippewa Bridge Co. v. City of Durand*, 122 Wis. 85, 106 Am. St. 931, 99 N. W. 603; *Hett v. City of Portsmouth*, 73 N. H. 334, 61 Atl. 596; 1 Abbott Munic. Corp., secs. 279, 280; 1 Dillon Munic. Corp., secs. 463-465; 20 Am. & Eng. Ency. 1180.) In discussing this same question in an earlier case in California, *McCracken v. City of San Fran-*

*cisco*, 16 Cal. 591, Chief Justice Field, among other things, says:

"It follows, as a consequence, that where the authority can originally be conferred only in a particular form or mode, the ratification must follow the same form or mode. Thus, if an authority to execute a deed of a private person must be under seal, the ratification of the deed must be also under seal; and where an authority to do any particular act on the part of a corporation can only be conferred by ordinance, a ratification of such act can only be by ordinance. . . . . 'A ratification of an act done by one assuming to be an agent relates back, and is equivalent to a prior authority.' (Story on Agency, 235, 239.)   When, therefore, the adoption of any particular form or mode is necessary to confer the authority in the first instance, there can be no valid ratification, except in the same manner."

If we apply these principles to the case now under consideration, it seems that the question of ratification ought to be of easy solution. Under the provisions of the statute the mayor may appoint policemen, which are the same as detectives, by and with the approval of the city council. If there were no appointment, therefore, of policemen, there could be no ratification under this statute, and it is admitted in this case that the mayor never appointed any detectives or policemen. All that the mayor did was to authorize the plaintiff to select persons to act as detectives. This he had no authority under the statute to do, and having no authority to do this act which would in any way bind the city, and having made no appointment, there was nothing to ratify.

It is argued, however, that although the persons paid by Mr. Hupp were never appointed policemen for the city of Moscow, yet inasmuch as the mayor authorized Mr. Hupp to select such persons, and the city council thereafter allowed the claim for the services rendered, such acts amount to an authorization or delegation of power by the mayor to Mr. Hupp to make such selection. This position, it seems to me, is untenable. The statute specifically directs by whom and how policemen for a city may be selected. There is no statutory authority giving to the mayor power to delegate

the selection of policemen to anyone else. While the mayor might ask for recommendations as to fitness and advisability of a selection, yet the selection must be made by the mayor. There is nothing in the acts of the parties in this case which shows that the mayor even attempted to appoint the persons selected by Mr. Hupp. To countenance this method of selecting employees of the city, and especially those who are to aid in the enforcement of the laws of the city, annuls and sets aside every provision of the statute with reference to the exercise of powers under the charter of the city. It would be a substitution of the will and wish of one individual for the charter.

If the mere fact that the city council allowed the bill ratifies and approves the course pursued in contracting the indebtedness, then the orderly procedure prescribed by statute, and the power conferred upon the city council to legislate, will be of no avail, as such matters can be displaced by the will and wish of the executive officer of the city. To construe the acts of the parties in this case into a ratification, in my judgment, violates every principle and every element necessary to constitute ratification. The very basis upon which ratification is allowed is the fact that the power existed to do the thing and in the particular way in the first instance. In this case there can be no question but that the statute in no way confers upon the mayor the power to act in the manner he did act in this case. I am unable to give my consent to the indorsement of this method of administering the affairs of a municipality. The public have a right to expect and demand that the affairs of a municipality shall be administered in accordance with law, and that they shall not be forced to accept and ratify illegal acts of the city council, done without the sanction of the law.

The majority of the court, however, are of the opinion that since the council had the authority, in the first place, to either employ these special officers or authorize their employment, the order of the council authorizing and directing payment for the service amounts to a ratification. They hold that there was nothing of a special or peculiar character re-

quired or necessary to be done precedent to, or contemporaneous with, the contract' of employment that cannot be done by a ratification of the employment by way of payment for the service rendered. They hold that this case comes within the rule recognized in the following authorities: 28 Cyc. 675, 676; *City of Calais v. Whidden,* 64 Me. 249 (253); *State v. Board of Commrs. of Pawnee Co.,* 12 Kan. 426 (439); *Hett v. City of Portsmouth,* 73 N. H. 334, 61 Atl. 596; *State v. District Court of Hennepin Co.,* 33 Minn. 235, 22 N. W. 625 (630). Applying the principle of ratification as announced in the foregoing authorities, I am clearly of the opinion that there was no ratification on the part of the city council which would legalize the creation of the indebtedness for which the plaintiff makes claim.

It is next argued on behalf of the appellant that the court had no jurisdiction to grant a temporary restraining order, because there was no verification of the complaint. This contention is based upon sec. 4289, Rev. Codes, as follows: "No injunction can be granted on the complaint, unless it is verified." An examination of the complaint, however, shows that it was verified. The verification is defective, in that the words, "of his own knowledge," are omitted therefrom; but counsel for appellant appeared in the lower court, filed an answer and filed affidavits, and made no objection whatever to the sufficiency of the verification to the complaint. Under these circumstances, we think the appellant waived the sufficiency of the verification. (*Greenfield v. Steamer Gunnell,* 6 Cal. 67; *McCullough v. Clark,* 41 Cal. 298; *People v. Reis,* 76 Cal. 269, 18 Pac. 309; *City of San Francisco v. Itsell,* 80 Cal. 57, 22 Pac. 74.)

It is also contended by appellant that the respondents could not bring this action, for the reason that they are not the real parties in interest. This contention is based upon the claim that there was an organization in the city of Moscow, known as the "Citizens' League," and that this league appointed the plaintiffs as a committee to bring this action. There is nothing in this contention. The complaint and the evidence was that the plaintiffs are resident tax-

payers of the city of Moscow and are. fully authorized to prosecute an action of this kind. The fact that they prosecuted this action upon behalf of an organization composed of other citizens of the city would not disqualify them from maintaining this action.

This disposes of all the questions properly arising upon this appeal, and inasmuch as the majority of the court are of the opinion that the action of the city council, in allowing the claim of appellant Hupp, amounted to a ratification of the acts leading up to the presentation of such claim and thereby made the same a legal charge against the city, this cause must be *reversed;* and the order of the court in granting a preliminary injunction is annulled and set aside. Costs awarded to the *appellant.*

Sullivan, C. J., and Ailshie, J., concur.