Strafford
No. 7355

RICHARD P. GREEN & a.

v.

JOHN SHAW & a.

September 30, 1976

*Boynton, Waldron, Dill & Aeschliman* and *Charles B. Doleac (Mr. Richard E. Dill* and *Mr. Doleac* orally) for the plaintiffs.

*Fisher, Parsons, Moran & Temple (Mr. Harold D. Moran* orally) for the defendants.

LAMPRON, J.   Bill in equity brought by city councilman and tax-payers of Rochester against the mayor, accountant, and commissioner of public works of that city seeking relief from various actions of defendants which plaintiffs claim were unlawful. In *Green v. Shaw,* 114 N.H. 289, 319 A.2d 284 (1974), this court sustained plaintiffs' exceptions to the granting of defendants' motion to dismiss their bill and the matter was remanded to the superior court. In the course of that opinion (114 N.H. at 292, 319 A.2d at 285) it was stated: "The acts of the newly elected mayor and council may by ratification have rendered moot some of the alleged unauthorized actions of the defendants."

On January 2, 1974, prior to the remand, the city council by a two-thirds vote had adopted a resolution validating and ratifying the purchase by Mayor John Shaw of the so-called LaChance property for use as a future school site for the sum of $15,000. On September 3, 1974, after the remand, the city council adopted by a vote of ten for and one against (there are 12 councilmen) a resolution indorsing and approving certain actions of the mayor and certain members of the council. They are the following: (1) the extension of water mains; (2) the granting of additional street lights locations; (3) charges paid for reregistration of voters as ordered by the New Hampshire State Legislature; (4) charges paid for rewiring of City Hall.

Defendants filed a motion in superior court to have withdrawn as moot all allegations in plaintiffs' bill pertaining to the matters covered by those two resolutions. In addition defendants also sought the withdrawal of the issues of alleged unauthorized expenditures from the revenue surplus account and any other action which the city council has the power by resolution or ordinance to regulate.

The matter was referred to *Amos N. Blandin, Jr.,* judicial referee, who held a preliminary hearing limited to the issues arising

out of the alleged ratifications. The referee made certain findings and rulings and transferred without ruling, in advance of trial on the merits, the question "whether, upon the facts found, ratification existed as a matter of law," thus rendering moot any or all of these issues raised by the plaintiffs' bill in equity. Plaintiffs' exceptions to the limiting of the hearing by the referee to the matter of ratification; to the transferring of that issue in advance of trial on the merits; to certain findings and rulings; and to the denial in part of their motion to modify the decree as well as other exceptions were reserved and transferred by *Mullavey*, J.

Also reserved and specifically transferred was plaintiffs' exception to certain comments made by *Mullavey*, J., at hearings on the denial of plaintiffs' motion to dismiss their bill in equity which was accompanied by a letter of explanation signed by the individual plaintiffs. The court's comments were directed at the reasons advanced by the plaintiffs for choosing this course of action.

The judicial referee made the following findings of fact which were supported by the evidence. "1. The temper of the majority of the council voting at the so-called ratification meetings of January 2, 1974 and September 3, 1974, was such that it fully intended to ratify all the defendant mayor and council's disputed acts, regardless of what laws, ordinances, city charter and council procedural rules might have been violated .... 2. So determined was the majority's attitude that had they known any other details regarding the violations ... than those of which they were aware, the vote would still have been to ratify ....

"4. [However, the majority] was well aware, through common knowledge, the media, discussion outside of the ratification meetings ... that there might have been violations of a number of statutes, ordinances, city charter provisions and regulations. The agenda for the January 2, 1974 meeting stated: 'Resolution to accept land purchase'. Although this did not specify the LaChance property, the court believes that the council was aware that it did refer to the purchase of that property .... In the case of the September 3 meeting a resolution and ratification vote, which had been circulated prior to the meeting among ten members of the council who voted to ratify, added to their knowledge. In these circumstances, the majority conclusively intended to vote to ratify and legalize all the mayor and council's disputed acts."

The judicial referee correctly rules as a matter of law that the city of Rochester had the power (1) to purchase land for school buildings; (2) to extend water mains; (3) to erect street lights; (4)

to repair and rewire the city hall; (5) to reregister its voters. Hence the city council which is vested by the city charter with the administration of all the fiscal, prudential and municipal affairs of the city could ratify any irregularities in the actions taken on behalf of the city which pertain to matters within the city's power to perform. *Hett v. Portsmouth,* 73 N.H. 334, 61 A. 596 (1905); *Lucier v. Manchester,* 80 N.H. 361, 117 A. 286 (1922); Laws 1957, 427:1.

The referee having properly found as facts that the city council intended by the two resolutions which they adopted to ratify the matters covered therein, the answer to the transferred question is that the irregularities in question were ratified as a matter of law in so far as it was in the power of the city council to do so. However, it is well established law that the City Council of Rochester cannot ratify noncompliance with the requirements of State statutes. *Calawa v. Litchfield,* 112 N.H. 263, 296 A.2d 124 (1972). This is based on the principle that the legislature, and not the city council, has sole authority over these matters. *See Rye Beach Dist. v. Beaudoin,* 114 N.H. 1, 4, 315 A.2d 181, 183 (1974).

The purpose of this transfer in advance of the trial on the merits, which we hold to have been proper (RSA 491:17), was stated by the referee to have been the following: "We believe before engaging in a trial on the merits, which might take weeks to conclude in this extraordinarily complex and many faceted case, we should have definite rulings from the Supreme Court on the above issues raised by the parties." This court in *Green v. Shaw,* 114 N.H. 289, 293, 319 A.2d 284, 286 (1974), adverted to this matter. "There remain ... serious allegations which should be determined by a hearing on the merits. To the extent that the defendants may be shown to have expended public funds without authority, have failed to carry out ministerial duties mandated by statutes or ordinances and threatened to act contrary to law in the future, plaintiffs may be entitled to the intervention of a court of equity." The city council by its resolutions adopting and ratifying the actions of the defendants has regularized these transactions in so far as it had power to authorize them at the outset. However, this action cannot obliterate the fact that these irregularities took place if this becomes material on issues and relief sought on the merits by plaintiffs' bill in equity. Furthermore, as hereinbefore stated, ratification by the city council cannot affect alleged violations of State laws by the defendants.

By their exception pertaining to their motion to dismiss their bill which was denied, plaintiffs complain about certain remarks

made by the presiding justice in conjunction therewith. We are of the opinion that it would serve no useful purpose if this court tried to assess the merits of this exception and it will not do so. Nor is it necessary to consider other exceptions of the plaintiffs in view of the result reached.

*Remanded.*

All concurred.