Daniel F. **SULLIVAN**,
Plaintiff, Appellee,

v.

Frederick R. **CARRICK**,
Defendant, Appellant.

No. 88–2059.

United States Court of Appeals,
First Circuit.

Heard Aug. 4, 1989.

Decided Oct. 25, 1989.

Rehearing and Rehearing En Banc
Denied Dec. 12, 1989.

David S. Peck, Asst. Atty. Gen., Concord, N.H., with whom John P. Arnold, Atty. Gen., Peterborough, N.H., was on brief for defendant, appellant.

Cynthia A. Satter, Hooksett, N.H., with whom Devine, Millimet, Stahl & Branch, Manchester, N.H., was on brief for plaintiff, appellee.

Before BOWNES, TORRUELLA and SELYA, Circuit Judges.

TORRUELLA, Circuit Judge.

The defendant, Frederick Carrick, appeals from the district court's denial of his motion for summary judgment based on the defenses of absolute and qualified immunity. Our jurisdiction over this appeal is based on the collateral order doctrine of *Nixon v. Fitzgerald*, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) and *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

We describe the facts in the light most favorable to the nonmovant. *See Unwin v. Campbell*, 863 F.2d 124, 126 (1st Cir.1988). Both Carrick and Daniel Sullivan, the plaintiff, are licensed chiropractors who practice in New Hampshire. In addition to their private practices, both Sullivan and Carrick are officers in professional organizations. Sullivan is Chairman of the New Hampshire Chiropractic Professional Standards Review Organization. In this capacity, he is often called upon to evaluate the propriety and quality of disputed chiropractic treatment. Sullivan has testified on numerous occasions about treatment provided by Carrick. At times, Sullivan's testimony has been directly contrary to that offered by Carrick, visibly upsetting the latter. Carrick has expressed his animosity towards Sullivan openly, approaching him after one hearing and saying, "I am going to get you for this, you little smurf!"

Carrick is Chairman of the New Hampshire Board of Chiropractic Examiners (the "Board"). The Board investigates complaints against chiropractors. The Board deals with complaints in one of four ways: it can dismiss the complaint summarily, it can conduct an informal hearing, it can administer a private warning, or it can institute and oversee the prosecution of a formal disciplinary hearing. The normal procedure for reviewing a complaint is to appoint an investigator, who is supposed to "contact and question each party individually about the complaint, seeking to determine if grounds exist upon which a hearing

should be conducted or some other action taken." Upon completion of the examination, the investigator must submit a written report to the Board containing a recommendation for disposition of the complaint. If the Board so chooses, however, it may act on a complaint directly without taking the intermediate step of appointing an investigator.

On June 10, 1985, Carrick in his official capacity wrote a letter to Sullivan informing him that the Board had scheduled a formal disciplinary hearing regarding a complaint it had received about Sullivan from Ronald Aragona, another chiropractor. Carrick's letter briefly summarized the complaint. Sullivan had apparently rendered second opinions as an independent examiner on three of Aragona's patients. Sullivan essentially opined that the treatment provided by Aragona was therapeutical rather than corrective and that its cost should not be reimbursed under worker's compensation. In his complaint, Aragona alleged that Sullivan's judgment was biased because he had "sold [his] professional services to the insurance industry." App. at 5.

Sullivan states that he was alarmed upon receiving this letter and afraid that the hearing might lead to the revocation of his license. He contacted Edward O'Malley, the Secretary of the Board, for details regarding the pending proceedings. According to Sullivan, O'Malley confirmed that the Board had received a complaint from Aragona, but stated that the Board had not decided what action to take on the complaint. Sullivan then filed the instant lawsuit against Carrick in December 1985, alleging under 42 U.S.C. § 1983 that Carrick had violated his First Amendment rights by unilaterally deciding to hold a formal disciplinary hearing on the complaint against Sullivan in retaliation for the latter's previous testimony. The complaint also stated pendent state claims, including intentional and negligent infliction of emotional distress, and malicious prosecution.

Carrick answered that the Board had been notified of the receipt of a complaint against Sullivan at its April 11, 1985 meeting, and had authorized Carrick to send a notice of a formal disciplinary hearing to Sullivan at its April 18 meeting. Carrick does not dispute, however, that (a) the April 11 meeting minutes indicate that the Board members were not aware of the specific charges in Aragona's complaint and (b) that there is nothing explicit in the minutes of the April 18 meeting, or any other meeting prior to June 10, indicating that the Board had decided to hold a formal disciplinary hearing with respect to the complaint against Sullivan. Furthermore, the audiotape of the critical April 18 meeting has mysteriously disappeared.

Meanwhile, the processing of Aragona's complaint against Sullivan continued. The formal disciplinary hearing that was the subject of the June 10 letter never took place. Instead, at its November 21, 1985 meeting, the Board decided to step back and investigate the complaint further before taking any action. Ronald Lanzara, one of the Board members, was appointed the official investigator for the complaint, to determine if there was a reasonable basis to conduct a formal disciplinary hearing on the complaint. After completing his investigation, Lanzara filed a written report on February 6, 1986. The report questioned Sullivan's professional judgment and diagnoses, and concluded that Sullivan may "indeed be selling his services to a third-party insurance company." The report ended by recommending that the Board conduct a formal disciplinary hearing. At its September 4, 1986 meeting, the Board unanimously voted to adopt Lanzara's recommendation. It then formally authorized Carrick to send Sullivan another notice of hearing. The letter was sent on September 8, and set October 2 as the hearing date. On September 17, Sullivan moved to dismiss the complaint. The Board considered this motion at its October 2 meeting, and granted it in a written opinion issued on October 8, 1986. The reason for the dismissal was unclear; the Board vaguely stated that while it was "very much concerned by the serious nature of the allegations, ... the circumstances surrounding these complaints mandate their dismissal." Thus, no formal disciplinary hearing was

ever held concerning the complaints against Sullivan.

With respect to Sullivan's lawsuit, Carrick moved for summary judgment based on absolute immunity. His motion was accompanied by five affidavits. Three of these affidavits were from O'Malley and two other Board members who were present at both the April 11 and 18 Board meetings. They stated that although the minutes do not reflect an official vote, the Board at its April 18 meeting had unanimously authorized Carrick to proceed on all the pending complaints, including the one against Sullivan. The fourth affidavit was from a Board member who was not present at the April 18 meeting. He recalled having discussed with other Board members the Board's request that Carrick schedule a hearing for the complaint against Sullivan. The fifth affidavit was that of Carrick himself, in which he claimed that the Board had authorized him, at its April 11 and 18 meetings, to send out notices of hearing regarding several pending complaints, including that of Sullivan. Carrick also pointed out that his actions had been unanimously ratified by the Board on January 8, 1987.

On August 11, 1987, the district court denied the absolute immunity motion for summary judgment because there was a genuine dispute about a material fact—whether Carrick had been authorized by the Board to send the June 10 notice of formal disciplinary hearing to Sullivan. Carrick filed a motion to reconsider, arguing that the retroactive ratification by the Board eliminated any dispute about whether the June 10 letter had been authorized by the Board. The court disagreed, reasoning that the Board's retroactive ratification could not immunize Carrick's actions.

Carrick filed an interlocutory appeal with this court. While the appeal was pending, we decided that when a defendant claims both absolute and qualified immunity in a civil rights action, we will not entertain an interlocutory appeal on one defense while the other is reserved for later pretrial proceedings. *See Kaiter v. Town of Boxford*, 836 F.2d 704, 708 (1st Cir.1988). On January 8, 1988, Carrick was allowed to withdraw his appeal without prejudice in order to assert his qualified immunity defense in the district court.

On July 29, 1988, Carrick filed a second motion for summary judgment before the district court, on the grounds of qualified immunity. The motion was accompanied by three more affidavits—from Aragona, O'Malley, and Carrick himself. On September 14, 1988, the district court once again denied Carrick's motion for summary judgment, holding that the defendant's acts were not objectively reasonable if all factual inferences were resolved in favor of the plaintiff. "This case simply presents too many factual inquiries best left to the resolution of a jury." App. at 308.

*Discussion*

Carrick, in asserting his defense of qualified immunity, must prove that the conduct complained of "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations omitted). This court must look to the "'objective reasonableness of [the defendant's] conduct, as measured by reference to clearly established law,' to determine whether the doctrine of qualified immunity applies." *Unwin v. Campbell*, 863 F.2d 124, 128 (1st Cir.1988) (citing *Harlow, supra*).

The qualifying test for qualified immunity is in two parts: whether (1) Sullivan's constitutional rights were violated; and (2) whether those rights were clearly established such that Carrick would have known that his conduct violated those rights. *Emery v. Holmes*, 824 F.2d 143, 147 (1st Cir. 1987). In this case, parts one and two of the test are "inexorably intertwined." *Unwin* at 133 n. 9. Like *Unwin*, then, we must evaluate the First Amendment claim. Even after resolving all factual issues in favor of the nonmovant we must conclude that there was no First Amendment violation as a matter of law.

On June 10, 1985, Carrick sent Sullivan an allegedly unauthorized notice of a formal disciplinary hearing. In November

**4**

1985, the Board decided to take a step back and investigate the Aragona complaint filed against Sullivan. In December 1985, Sullivan filed the present Section 1983 action. On September 17, 1986, Sullivan moved to dismiss the Aragona complaint. The Board granted this motion on October 8, 1986. On January 8, 1987, the Board unanimously ratified Carrick's June 10, 1985 letter. A governmental body "may effectively ratify what it could theretofore have lawfully authorized." *Mott v. Horstmann,* 36 Cal.2d 388, 224 P.2d 11, 12 (1950); *accord Swayne & Hoyt v. United States,* 300 U.S. 297, 302, 57 S.Ct. 478, 480, 81 L.Ed. 659 (1937); *Green v. Shaw,* 116 N.H. 562, 364 A.2d 1265, 1267 (1976). The mere fact that the authorization was retroactive does not render it ineffectual or violative.

Sullivan has not shown the deprivation of a First Amendment right. To show a First Amendment violation in this context Sullivan must allege that his speech was in fact chilled or intimidated by Carrick's letter. He does neither in his complaint. Absent such an allegation, no violation occurred. *Batton v. State Government of North Carolina, Executive Branch,* 501 F.Supp. 1173, 1181 (E.D.N.C.1980). *See also Amelunxen v. University of Puerto Rico,* 637 F.Supp. 426 (D.C.P.R.1986), *aff'd,* 815 F.2d 691 (1st Cir.1986). In short, defendant's mere allegation that he was harmed does not amount to satisfying the causation requirement of a Section 1983 action. *Gordon v. Warren Consol. Bd. of Educ.,* 706 F.2d 778, 780 (6th Cir.1983); *accord Laird v. Tatum,* 408 U.S. 1, 13, 92 S.Ct. 2318, 2325, 33 L.Ed.2d 154 (1972). Arguably, there was a potential chilling of Sullivan's willingness to testify, but this is not alleged; there are no specifics offered to support such a conclusion; there is no evidence in the record to indicate any such chilling; and the inference Sullivan would have us draw—that the June 10 letter, in and of itself, somehow had the potential to chill his freedom of speech—is, on this record, too implausible to be accorded weight. Where a chilling effect is speculative, indirect or too remote, finding an abridgment of First Amendment rights is

unfounded. *United States v. Harriss,* 347 U.S. 612, 626, 74 S.Ct. 808, 816–17, 98 L.Ed. 989 (1954). Lastly, an actual hearing might at least present itself as evidence of a possible violation. But no hearing was ever held. To hold that a violation of constitutional rights occurred, under the circumstances stated, would be to trivialize the First Amendment.

The facts indicate that Sullivan was anything but intimidated. As shown by the December, 1985 filing of the present action, Carrick's allegedly unauthorized letter of June 10, 1985, never intimidated Sullivan. Furthermore, Sullivan moved to dismiss Aragona's complaint on September 17, 1986 again showing that he obviously was not intimidated. Sullivan's rights remain unviolated. Without a First Amendment violation, both of the immunity issues are moot. We reverse the decision of the district court and grant summary judgment to the appellant.

*Reversed.*