856 F.2d 142
 129 L.R.R.M. (BNA) 2592, 49 Ed. Law Rep. 20
 GEORGIA ASSOCIATION OF EDUCATORS, Gwinnett County
Association of Educators, Executive Committee of Gwinnett
County Association of Educators, Debbie Thurston, Carl
Radford, Ona Blankenship, Jane Hughes, Nancy Neal, Jim Nix,
Jr., Gail McBride, Neva McGuire, Jo Clifton, and Marsha
Wooten, Plaintiffs- Appellants,
v.
GWINNETT COUNTY SCHOOL DISTRICT, All Board Members of
Gwinnett County Board of Education, Cecil Gober, Chairman,
Jeff Moore, Stan Jones, Louise Radloff, all individually and
in their official capacities, Bob Wood, in his official
capacity only, Alton Crews, Superintendent, individually and
in his official capacity, Defendants-Appellees.
 No. 87-8089.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 29, 1988.
Rehearing and Rehearing En Banc Denied Nov. 9, 1988.
 
 1
 Michael D. Simpson, Washington, D.C., for plaintiffs-appellants.
 
 
 2
 Theodore G. Frankel, Atlanta, Ga., for Georgia Ass'n of Educators.
 
 
 3
 Michael J. Goldman, Freeman & Hawkins, Dan E. White, Atlanta, Ga., E.L. Victoria Sweeny, Tennant, Davidson & Thompson, P.C., Lawrenceville, Ga., Jonathan David Moonves, Smith, Gambrell & Russell, David A. Handley, Atlanta, Ga., for defendants-appellees.
 
 
 4
 Appeal from the United States District Court for the Northern District of Georgia.
 
 
 5
 Before RONEY, Chief Judge, TJOFLAT, Circuit Judge and CLEMON*, District Judge.
 
 CLEMON, District Judge:
 
 6
 The Georgia Association of Educators (GAE), its local affiliate the Gwinnett County Association of Educators (GCAE) and individual teacher-members of these associations brought this action under 42 U.S.C. Section 1983 against the Gwinnett County School District, members of its Board of Education, and its superintendent, claiming that the defendants terminated an automatic payroll dues deduction service in retaliation for plaintiffs' exercise of their First Amendment rights. The district court granted summary judgment for the defendants. We reverse.
 
 I.
 
 7
 For more than twenty years, the Gwinnett County Board of Education provided its employees who were members of GAE, GCAE, and the National Education Association (NEA) a service of automatic payroll deduction of membership dues.
 
 
 8
 At the June 1985 meeting of the Gwinnett County Board of Education ("the Board"), the superintendent recommended that the Board terminate the dues deduction service for GAE-GCAE members,[1] and the Board voted 4-1 to accept the recommendation.
 
 
 9
 The publicly stated reason for the termination was that the administrative cost of providing the service would be an unauthorized expenditure of public funds.[2] According to the affidavits submitted below, however, the Board members admitted that the real reason for the termination of the dues deduction was that GCAE leaders had spoken to the Board on behalf of its members, that it admits nonprofessionals to membership, and that it is affiliated with NEA which is perceived by the Board as being a union. When approached concerning a resolution of the problem, the board chairman responded that "[t]he only way to resolve [the termination of the dues deduction service] is to get out of NEA." The lone board member who voted against the termination of the deduction service subsequently indicated that the real reason for the termination was a desire to destroy GCAE.
 
 
 10
 After the vote, the superintendent wrote to GCAE officers that "... the school board and administration have tossed, instead of marshmallows, a few hardballs back to GCAE...."
 
 
 11
 Following the termination, GCAE offered to pay the reasonable administrative costs involved in the dues deduction service for GCAE members. The defendants rejected the offer.
 
 
 12
 As a result of the termination of the service, GCAE has lost approximately 430 members and $81,000 in dues revenues.
 
 II.
 
 13
 For at least a quarter-century, [the United States Supreme] Court has made clear that even though a person has no 'right' to a valuable government benefit, and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests--especially his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited.
 
 
 14
 Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). The First Amendment protects the right of public employees to associate, speak and petition freely, as well as the right of associations to engage in advocacy on behalf of their members. The Government may not retaliate against individuals or associations for their exercise of First Amendment rights "by imposing sanctions for the expression of particular views it opposes." Smith v. Arkansas State Highway Employees, 441 U.S. 463, 464, 99 S.Ct. 1826, 1827-28, 60 L.Ed.2d 360 (1979).
 
 
 15
 The district court, relying on Smith and Arkansas State Highway Employees Local 1315 v. Kell, 628 F.2d 1099 (8th Cir.1980), held that plaintiffs had no constitutional right to a dues withholding service and thus, any impairment suffered as a result of the discontinuation of such service could not give rise to a cause of action under the First Amendment. The starting point of our analysis is not whether the dues deduction service is a constitutional right possessed by appellants;[3] rather the initial inquiry is whether the service is a valuable benefit to either the individual or the associational plaintiffs. The district court erred as a matter of law[4] in failing to address the issue with respect to GCAE.[5]
 
 
 16
 Whether the dues deduction service is a valuable benefit to individual plaintiffs turns on the extent to which the absence of the service has caused them expense and inconvenience. When the evidence appearing in the record is construed most favorably for the individual plaintiffs, the logical inferences create a genuine issue of disputed facts.[6]
 
 
 17
 Summary judgment for the defendants was therefore inappropriate on the initial inquiry.
 
 
 18
 The district court did not reach the second level of inquiry, i.e., whether the termination of the dues checkoff service was retaliatory. Obviously, the defendants were not entitled to summary judgment on the ground that they did not act in a retaliatory manner, for the evidence concerning the defendants' motive is vigorously disputed.[7]
 
 III.
 
 19
 Because the district court did not recognize the settled law that state officials may not retaliate against associations and individuals for their exercise of First Amendment rights, and genuine factual issues preclude granting summary judgment for the defendants, the judgment is REVERSED and the cause REMANDED for proceedings not inconsistent with this opinion.
 
 
 
 *
 Honorable U.W. Clemon, U.S. District Judge for the Northern District of Alabama sitting by designation
 
 
 [1]
 Although not discussed by the district court in its findings of fact, the following background information is alleged by plaintiffs in affidavits submitted below
 Within the past few years, the superintendent has become increasingly hostile towards GCAE--principally because it is affiliated with NEA and it admits non-professional school personnel to associate memberships.
 Relations between GCAE and the superintendent came to a head at a May 1985 meeting of the Board. Kenneth Cain, a Board-employed bus mechanic, appeared before the Board and read a statement of his grievance. Cain is a member of GCAE, and his written statement was prepared by GCAE president Debbie Thurston. Thurston was also in attendance at the meeting.
 Immediately following the meeting, the superintendent sent a memorandum to the Board members, in which he said, among other things:
 If we go beyond the law and permit anyone to address the Board, we can be assured that the GCAE-NEA union will be here every month with some disgruntled employee.
 In Georgia the GAE, the NEA affiliate, has seen its membership decline from 42,000 to approximately 29,000 teachers. Its membership is being drawn increasingly from racial minorities. It is small wonder that the NEA union has targeted Gwinnett County, Georgia's fastest growing school system, with its 97% white employee membership.
 I respectfully remind the Board that the NEA has twenty-five years of collective bargaining experience, has trained its employees thoroughly in techniques of divisiveness and militant action, is totally committed to the unionization of teachers, and is a formidable opponent.
 I will be developing some recommendations to the Board regarding the management problems that I refer to in this letter.
 
 
 [2]
 Prior to recommending the termination of the deduction service, the superintendent obtained the advice of counsel concerning the legality of the service as well as the legality of terminating it. Counsel was "... of the opinion that dues checkoff probably is an improper expenditure of school funds; but I regard the question of how the courts would view the legality of dues checkoff as an open one. Historically, the courts tend to construe educational purposes broadly." Earlier in his letter opinion, counsel had noted the argument that "... the dues deduction promotes good employee relations and that such good relations are necessary for public education." Counsel's letter assumed that "the employee organizations are not reimbursing the school district for the administrative costs of carrying out the deductions...."
 
 
 [3]
 The authorities make it clear that the plaintiffs have no such constitutional right. Smith, supra; City of Charlotte v. Firefighters, 426 U.S. 283, 96 S.Ct. 2036, 48 L.Ed.2d 636 (1976)
 
 
 [4]
 The court was of the view that the First Amendment does not protect associations engaged in advocacy from retaliation at the hands of state officials. That view is erroneous. Smith, supra; Alabama State Federation of Teachers v. James, 656 F.2d 193, 197 (5th Cir.1981)
 
 
 [5]
 There is evidence in the record that the dues deduction service is a valuable benefit to GCAE. The Board chairman analogized the service to "firewood to people who are burning a fire." Without the service, GCAE has lost fully a third of its members and substantial revenues. The union has been put to the time and expense of collecting the dues of the Gwinnett County employees who remain its members
 
 
 [6]
 The district court should have inferred that without the service, individual members would be required to write personal checks or purchase money orders in the amount of their monthly dues, which would be paid for by the members. It should have inferred that additional time of members would be required to send the checks or money orders to GCAE and GAE. Although the district court opined that "[only] the method of dues payment has changed", it should have inferred that the change has likely resulted in additional expense and inconvenience for the individual plaintiffs
 
 
 [7]
 Discovery was postponed pending disposition of the Motion For Summary Judgment. Basically, the defendants contend that the termination was based on their good-faith belief that the dues deduction service violated Georgia law. Plaintiffs' evidence, if credited, would compel the conclusion that retaliation was the sole motivation of the defendants