[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 9, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-12256

_____

D. C. Docket No. 00-02520-CV-TWT-1

DANNY M. BENNETT,
DANNY L. REID,
TAMMY R. BENNETT,

Plaintiffs-Appellees,

versus

DENNIS LEE HENDRIX, Individually and in his
Official capacity as Sheriff of Forsyth County,
EARL A. SINGLETARY, Individually and in his
Official Capacity as Chief Deputy Sheriff
of Forsyth County,
DAVID W. WATERS, Individually and in his
Official Capacity as a Deputy Sheriff
of Forsyth County,

Defendants-Appellants,

JAMES L. LOCKHART, Individually and in his
Official Capacity as a Deputy Sheriff
of Forsyth County,
JOHN DOES, 1-10, Individually
and in their Official Capacities as Deputy
Sheriffs and/or Officers of the Forsyth County

Sheriff's Department,
et al.,

                                                    Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

**(September 9, 2005)**

Before BLACK and WILSON, Circuit Judges, and NANGLE*, District Judge.

WILSON, Circuit Judge:

Plaintiffs Danny M. Bennett and Danny L. Reid filed a complaint alleging that Dennis L. Hendrix, former Sheriff of Forsyth County, Georgia and Earl A. Singletary and David W. Waters, deputies who served under Hendrix, violated their civil rights.  Plaintiffs alleged that these officers carried out a campaign of police harassment and retaliation after plaintiffs supported a county referendum opposed by the sheriff.  After the district court entered an order denying the officers qualified immunity, they brought this appeal .  We find no error in the district court's order, and therefore **affirm**.

_____

*Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

2

## I. BACKGROUND

In 1998, Forsyth County, Georgia voters considered a referendum that would have established a county-wide police force and diminished the power of the Forsyth County Sheriff's Department.[1] Most of the Department's powers would have been transferred to the county police, and the Sheriff would have been under the supervision of county officials. Sheriff Hendrix opposed the referendum. The plaintiffs are local business owners who supported the referendum. Along with other citizens, they formed a committee in support of the referendum and sponsored a debate on the matter.

The referendum was defeated at the polls, but the plaintiffs allege that Hendrix (along with the other defendants, fellow Sheriff's Department officers) engaged in a campaign of retaliation and intimidation against the plaintiffs because of their support of the referendum. The plaintiffs allege that Hendrix formed a "Strike Force" within the Department to carry out this process of intimidation.

Among many other acts of intimidation, they allege the defendants took down license tag numbers of cars at a forum in support of the referendum, surveilled the plaintiffs' homes and businesses, set up roadblocks near their homes, stopped their cars without reason and issued false traffic citations, accessed

---

[1]We present the facts in the light most favorable to the plaintiffs, the party opposing summary judgment. *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

government databases to obtain confidential information on the plaintiffs, attempted to obtain a warrant for their arrest on trumped-up environmental charges, and mailed flyers to 35,000 homes in Forsyth County calling the plaintiffs the "real criminals," members of a "chain gang," and "the same type of criminals that terrorize Forsyth County."

According to the plaintiffs, most of these events occurred shortly before the 2000 election, and were designed to intimidate the plaintiffs from opposing Hendrix's re-election that year. The plaintiffs assert that the intimidation tactics were successful. Although the plaintiffs voted and made campaign contributions during the 2000 election cycle, they allege that the defendants' actions chilled them from engaging in further political activities like they did in 1998.

The plaintiffs sued under 42 U.S.C. § 1983 in 2000, alleging violations of the First, Fourth, and Fourteenth Amendments, as well as a conspiracy to violate their civil rights, along with several state tort laws. The district court granted summary judgment to the defendants on most of these claims, but denied summary judgment on the plaintiffs' claim of retaliation in violation of the First Amendment, their § 1983 conspiracy claim, and state law claims against Hendrix, Singletary, and Waters. The defendants moved for summary judgment based on the defense of qualified immunity. The court held that the defendants were not

entitled to qualified immunity because they had violated the plaintiffs'

constitutional rights, and those rights were clearly established at the time.

Accordingly, the district court denied summary judgment.[2]

## II.    JURISDICTION AND STANDARD OF REVIEW

Although the defendants' appeal is interlocutory, we have jurisdiction to

review the district court's decision on qualified immunity pursuant to 28 U.S.C. §

1291 and *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S. Ct. 2806, 2817 (1985).

We review *de novo* the district court's decision denying qualified immunity,

drawing all factual inferences in the nonmovant's favor.  *Durruthy v. Pastor*, 351

F.3d 1080, 1084 (11th Cir. 2003).  Summary judgment is appropriate only "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material

fact."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct.

2548, 2552 (1986).

## III.    DISCUSSION

Our procedure in assessing qualified immunity is well-established.

Government officials acting within their discretionary authority are eligible for

---

[2]The court granted summary judgment for the defendants as to the claims brought by plaintiff Tammy Bennett, and she is not a party to this appeal.  Likewise, the district court granted summary judgment on the plaintiffs' claims against the additional defendants.  Thus, the only issue before us is the entitlement of Hendrix, Singletary, and Waters to qualified immunity.

qualified immunity from suit when the facts "[t]aken in the light most favorable to the party asserting the injury . . . show the officer's conduct violated a constitutional right" and "the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001).

We have already determined, in an earlier appeal in this case, that "it is apparent that the defendants were acting within the scope of their discretionary authority." *See Bennett v. Hendrix*, No. 02-11031 (11th Cir. July 25, 2003) (unpublished). The defendants had to establish this fact to be able to claim qualified immunity. Once they satisfied that burden, the burden shifted to the plaintiffs to establish a constitutional violation. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).

## A.     Violation of a Constitutional Right

The precise test for determining whether the defendants' actions violated the plaintiffs' rights against retaliation is an issue of first impression in this Circuit. We first survey the law of other Circuits. To state a retaliation claim, the commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on

6

speech.  *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005); *Keenan v. Tejada*, 290 F.3d 252, 258 (5th Cir. 2002).  The only prong at issue here is the second.[3]  We must determine the standard for demonstrating an adverse effect on protected speech.

The other Circuits apply an objective test: "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights."  *Constantine*, 411 F.3d at 500; *see also Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004) ("In the context of a First Amendment retaliation claim, we have held that '[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action.'") (quoting *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001)); *Garcia v. City of Trenton*, 348 F.3d 726, 728 (8th Cir. 2003) ("The ordinary-firmness test is well established in the case law . . . ."); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (plaintiff must allege adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights") (alteration

---

[3]In the district court, the defendants conceded the first prong, that the plaintiffs' support for the 1998 referendum was protected speech.  In addition, the defendants have never pointed to any indication in the record that they would have undertaken their allegedly retaliatory actions even absent the plaintiffs' speech.  Accordingly, we agree with the district court that the plaintiffs have shown that there exists at least a genuine issue of material fact as to the third (causation) prong.

7

in original); *Keenan*, 290 F.3d at 258 (ordinary firmness test is the "settled law of other circuits"); *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 585 (D.C. Cir. 2002) ("The widely accepted standard for assessing whether harassment for exercising the right of free speech is actionable . . . depends on whether the harassment is likely to deter a person of ordinary firmness from that exercise.") (internal quotations and alterations omitted); *Poole v. County of Otero*, 271 F.3d 955, 960 (10th Cir. 2001) ("[T]he alleged injury should be one that would chill a person of ordinary firmness from continuing to engage in that activity.") (internal quotations omitted); *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999) ("[T]he proper inquiry asks whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.") (internal quotations omitted); *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999) (*en banc*) ("[A]n adverse action is one that would deter a person of ordinary firmness from the exercise of the right at stake."); *Agosto-de-Feliciano v. Aponte-Roque*, 889 F.2d 1209, 1217 (1st Cir. 1989) (retaliation cause of action is stated "only when the government's actions are sufficiently severe to cause reasonably hardy individuals to compromise their political beliefs and associations"); *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) (harassment for exercising the right of free speech not actionable if it was "unlikely to deter a

8

person of ordinary firmness from that exercise").

The defendants point to other cases applying a subjective test, under which the plaintiffs would have to show that they were actually chilled in the exercise of their First Amendment rights. *See Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (plaintiff must show that First Amendment rights were "actually chilled") (quoting *Davis v. Vill. Park II Realty Co.*, 578 F.2d 461, 464 (2d Cir. 1978)).[4] For the reasons that follow, we join our sister Circuits in adopting an objective test for proving a retaliation claim.

First, although their decisions are not binding on us, we find the fact that every other Circuit has adopted the objective "ordinary firmness" test to be persuasive. Even accepting the defendants' premise that a few scattered cases applying a subjective "actual chill" test amounts to a "circuit split," the vast majority of cases apply the objective test.[5] We agree with the courts that have called the "ordinary firmness" test "well established," *Garcia*, 348 F.3d at 728, "widely accepted," *Toolasprashad*, 286 F.3d at 585, and "settled law," *Keenan*,

---

[4]The defendants also cite *Sullivan v. Carrick*, 888 F.2d 1 (1st Cir. 1989), as adopting an "actual chill" standard. However, the plaintiff there failed to allege any adverse action, and thus could not show sufficient injury to create standing. *Id.* at 4. Moreover, the court noted that the proper standard was whether the plaintiff's "speech was in fact chilled *or intimidated*." *Id.* (emphasis added). Therefore, we do not read *Sullivan* to adopt unequivocally a subjective test.

[5]We note that cases from the Second Circuit appear to take contradictory positions. *Compare Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004) (objective standard) *with Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (subjective standard). We leave it to that Court to settle this disparity.

290 F.3d at 258.

Second, we are persuaded not only by the number of courts applying the "ordinary firmness" test, but by the reasoning of those decisions as well. An objective standard provides notice to government officials of when their retaliatory actions violate a plaintiff's First Amendment rights. In contrast, "a subjective standard would expose public officials to liability in some cases, but not in others, for the very same conduct, depending upon the plaintiff's will to fight." *Constantine*, 411 F.3d at 500. "[I]t would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity. . . ." *Mendocino Envtl. Ctr.*, 192 F.3d at 1300. There is no reason to "reward" government officials for picking on unusually hardy speakers. At the same time, we recognize that government officials should not be liable when the plaintiff is unreasonably weak-willed or suffers only a "*de minimis* inconvenience to her exercise of First Amendment rights." *Constantine*, 411 F.3d at 500 (internal quotation omitted); *see also Bart*, 677 F.2d at 625 ("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise . . . ."). The "ordinary firmness" test is therefore protective of the interests of both government

10

officials and plaintiffs alleging retaliation.

The defendants contend that "something more than the mere retaliatory act is necessary to give rise to an actionable claim." *Appellants' Brief* at 12. They are correct, but as we have explained, the "something more" is an adverse affect, and "adverse effect" depends on context. Specifically, private citizens must establish that the retaliatory acts would deter a person of ordinary firmness from exercising his or her First Amendment rights. The defendants' reliance on retaliation cases in the public employment context is misplaced, because different interests are at stake there. In the employment context, the required adverse action in a retaliation claim is an "adverse employment action." *See Stavropolous v. Firestone*, 361 F.3d 610, 616 (11th Cir. 2004), *cert. denied*, 125 S. Ct. 1850 (2005). Plainly, private citizens cannot suffer adverse employment actions at the hands of public officials who are not their employers. As the Fourth Circuit explained,

> Determining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999) ("[T]he definition of adverse action is not static across contexts."). For example, in the public employment context, the speaker is the employee and the retaliator is the public employer. The employment relationship between the speaker and retaliator creates competing interests between "the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the [government], as an employer, in promoting the

11

efficiency of the public services it performs through its employees."

*Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2002) (quoting

*Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S. Ct. 1731, 1734-35 (1968))

(alterations in original).  As the Fifth Circuit pointed out, "[i]n the employment

context, this court's requirement of an adverse employment action serves the

purpose of weeding out minor instances of retaliation."  *Keenan*, 290 F.3d at 258

n.4.  In other words, minor instances of retaliation would not chill a person of

ordinary firmness because they did not even amount to an adverse employment

action.

The balance of interests is different when the plaintiff is a private citizen,

and those interests require at least as much protection against retaliation for a

private citizen as they would for a public employee.[6]  *See Thaddeus-X*, 175 F.3d at

398 ("[P]ublic employees . . . may be required to tolerate more than average

citizens, before an action taken against them is considered adverse."); *see also*

---

[6]We note that several courts have applied the "ordinary firmness" test even in the prison context.  It follows that a private citizen, not subject to the expected deprivations of prison life, deserves at least as much protection from retaliation.  *See Mitchell*, 318 F.3d at 530; *Toolaprashad*, 286 F.3d at 585; *Thaddeus-X*, 175 F.3d at 398. We have held that "[t]o state a First Amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right. . . . The gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003) (alterations omitted) (quoting *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989).  For example, a prisoner can state a claim of retaliatory transfer even though he does not have a constitutional right not to be transferred. *Bridges v. Russell*, 757 F.2d 1155, 1157 (11th Cir. 1985).  Thus, nothing in our prisoner retaliation cases is inconsistent with adopting an "ordinary firmness" test for private citizens.

*Keenan*, 290 F.3d at 258 (noting that "this case does not involve an employment or other contractual relationship between the plaintiffs and the governmental officials" and instead concerns "an ordinary citizen"); *Naucke v. City of Park Hills*, 284 F.3d 923, 927-28 (8th Cir. 2002) (applying "ordinary firmness" test to private citizen's retaliation suit); *Poole*, 271 F.2d at 960 (same); *Suarez Corp.*, 202 F.2d at 686-87 (distinguishing between public employee and private citizen plaintiffs).

In sum, language from the cases, including our decision in *Stavropolous*, requiring an adverse employment action in order for a public employee to state a retaliation claim does not necessitate that a private citizen plaintiff plead more than that the defendant's retaliatory acts are such as would chill a person of ordinary firmness. As we have stated, for private citizen plaintiffs, the objective test allows for a "weeding out" function when the injuries complained of are trivial or amount to no more than *de minimis* inconvenience in the exercise of First Amendment rights.

The defendants next assert that the "ordinary firmness" test allows plaintiffs to state a claim even when they have not suffered an injury sufficient to give them standing to sue. We disagree. The plaintiffs' claim depends not on the denial of a constitutional right, but on the harassment they received for exercising their rights. "The reason why such retaliation offends the Constitution is that it threatens to

13

inhibit exercise of the protected right." *Thaddeus-X*, 175 F.3d at 394 n.9

(quotation omitted). "For Article III standing purposes, then, the 'plaintiff must

allege personal injury fairly traceable to the defendant's allegedly unlawful

conduct and likely to be redressed by the requested relief.' As long as the injury is

'distinct and palpable' rather than abstract, conjectural, or hypothetical, it is

sufficient to confer standing." *Id.* at 394 (quoting *Allen v. Wright*, 468 U.S. 737,

751, 104 S. Ct. 3315, 3324 (1984)).

The defendants' reliance on *Laird v. Tatum*, 408 U.S. 1, 92 S. Ct. 2318

(1972), is misplaced. In that case, the plaintiffs alleged a chilling effect based on

the mere existence of the government's alleged program of surveillance of citizens.

*Id*. at 2, 92 S. Ct. at 2320. The plaintiffs "freely admit[ted] that they complain of

no specific action of the Army against them." *Id*. at 9, 92 S. Ct. at 2323. The

Supreme Court held that this alleged injury was insufficient to confer standing. *Id.*

at 13-14, 92 S. Ct. at 2325-26.

However, the *Laird* Court noted that, "[i]n recent years this Court has found

in a number of cases that constitutional violations may arise from the deterrent, or

'chilling,' effect of governmental regulations that fall short of a direct prohibition

against the exercise of First Amendment rights." *Id.* at 11, 92 S. Ct. at 2324

(collecting cases). Moreover, "[t]he decisions in these cases fully recognize that

14

governmental action may be subject to constitutional challenge even though it has only an indirect effect on the exercise of First Amendment rights." *Id.* at 12-13, 92 S. Ct. at 2325. The standard established in *Laird* is that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Id.* at 13-14, 92 S. Ct. 2325-26. The standard we adopt today is consistent with *Laird*. The objective "ordinary firmness" test requires plaintiffs to allege that the retaliatory acts of the defendants adversely affected them, which is an injury sufficiently adverse to give rise to Article III standing. *See Thaddeus-X*, 175 F.3d at 394.

As a final reason for approving of the objective standard, we note that it is consistent with statements in our own cases, even though we have not explicitly adopted the "ordinary firmness" test. In *Cate v. Oldham*, 707 F.2d 1176 (11th Cir. 1983), we enjoined a malicious prosecution action filed by state officials in retaliation against a citizen's lawsuit against those officials. *Id.* at 1190. We noted that "petitioner-appellant alleges more than that his freedom to exercise his right to petition will be chilled in the future. He alleges current deprivation, in the form of penalization for having exercised his right to petition in the past." *Id.* at 1188. We went on to state, "[t]his does not mean, however, that only if a plaintiff can prove actual, current chill can he prove irreparable injury. On the contrary, direct

15

retaliation by the state for having exercised First Amendment freedoms in the past is particularly proscribed by the First Amendment." *Id.* at 1189. Thus, we did not focus on the plaintiff's subjective, actual chilling. Instead, we objectively assessed the defendants' actions and declared that an actual chill is not necessary to state a First Amendment violation: "[T]he *source* of that chill . . . provides the critical irreparable injury to those citizens, regardless of whether actual chill is proved." *Id.*; *see also Holloman v. Harland*, 370 F.3d 1252, 1268-69 (verbal censure from school official for student's silent protest during recitation of Pledge of Allegiance was a punishment intended "to dissuade [student] from exercising a constitutional right" and "cannot help but have a tremendous chilling effect on the exercise of First Amendment rights").

For all of the foregoing reasons, today we expressly adopt the following standard: A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights.

We now apply this standard to the plaintiffs' allegations, and readily conclude that the plaintiffs have alleged facts that a jury could find would deter a person of ordinary firmness from the exercise of First Amendment rights. In Judge Posner's words, "[t]he effect on freedom of speech may be small, but since there is

16

no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable." *Bart*, 677 F.2d at 625.

The alleged retaliatory acts complained of here include a prolonged and organized campaign of harassment by local police officers. Taken in the light most favorable to the plaintiffs, the record is replete with instances where the defendants followed, pulled over, cited, intimidated, or otherwise harassed the plaintiffs. The defendants allegedly accessed confidential government databases containing information on the plaintiffs, attempted to obtain arrest warrants against the plaintiffs without probable cause, and produced and mailed to Forsyth County residents flyers depicting the plaintiffs as criminals terrorizing the county.

Other courts applying the "ordinary firmness" test have concluded that similar or less harassing acts constitute an adverse effect. *See Garcia*, 348 F.3d at 729 (the retaliatory issuance of parking tickets totaling $35 created a jury issue because the defendant "engaged the punitive machinery of government in order to punish Ms. Garcia for her speaking out"); *Keenan*, 290 F.3d at 259 (one plaintiff stated a retaliation claim that would chill a person of ordinary firmness with allegations that officers stopped his car and detained him for an unreasonable time, "allegedly with their guns drawn during part of the traffic stop, and ultimately issued only a minor traffic citation that was later dismissed"); *Bloch v. Ribar*, 156

17

F.3d 673, 680-81 (6th Cir. 1998) (in response to plaintiff's criticism, sheriff publicly released confidential and humiliating details of plaintiff's rape; such act was sufficiently adverse to chill a person of ordinary firmness); *Bart*, 677 F.2d at 624-25 ("campaign of petty harassments" against the plaintiff including "[h]olding her up to ridicule for bringing a birthday cake to the office" stated a cause of action for retaliation). Likewise, we held in *Cate* that a civil malicious prosecution suit brought by public officials could be sufficiently retaliatory to chill the plaintiffs' exercise of First Amendment rights. *Cate*, 707 F.2d at 1189.

Additionally, the plaintiffs testified that they were, in fact, actually chilled in the exercise of their rights because they did not participate in the 2000 election to the degree they would have but for the defendants' alleged actions. We note that "[t]he question is not whether the plaintiff herself was deterred, though how plaintiff acted might be evidence of what a reasonable person would have done." *Garcia*, 348 F.3d at 729; *see also Constantine*, 411 F.3d at 500 ("While the plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activity, it is not dispositive."). In sum, we conclude that the acts alleged here, if true, are sufficiently adverse that a jury could find they would chill a person of ordinary firmness from exercising his or her First Amendment rights.

18

**B. Clearly Established Law**

The final step in the qualified immunity inquiry is determining whether the law was clearly established so as to put the defendants on notice that their behavior violated the plaintiffs' rights. A right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is "apparent," *see Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987), and if a constitutional rule applies with "obvious clarity" to give an official "fair warning" that violating that right is actionable. *Vinyard*, 311 F.3d at 1350-52. We conclude that the law was clearly established at the time of the defendants' alleged actions that retaliation against private citizens for exercising their First Amendment rights was actionable.

This Court and the Supreme Court have long held that state officials may not retaliate against private citizens because of the exercise of their First Amendment rights. *See Cate*, 707 F.2d at 1186 (punishment for exercise of First Amendment rights violates First Amendment); *see also City of Houston v. Hill*, 482 U.S. 451, 462-63, 107 S. Ct. 2502, 2510 (1987) ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."); *see also Leslie v. Ingram*, 786 F.2d 1533, 1537 (11th Cir. 1986) ("An intentional and wrongful retaliation for the assertion of a constitutionally protected

19

right is a substantive civil rights violation which may be prosecuted in a federal court pursuant to 42 U.S.C. § 1983. . . .”), *abrogated on other grounds by Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865 (1989) ; *Ga. Ass'n of Educators v. Gwinnett County Sch. Dist.*, 856 F.2d 142, 145 (11th Cir. 1988) (“The Government may not retaliate against individuals or associations for their exercise of First Amendment rights 'by imposing sanctions for the expression of particular views it opposes.'”) (quoting *Smith v. Ark. State Highway Employees*, 441 U.S. 463, 464, 99 S. Ct. 1826, 1827-28 (1979)).

Because this Court has held since at least 1988 that it is “settled law” that the government may not retaliate against citizens for the exercise of First Amendment rights, *Ga. Ass'n of Educators*, 856 F.3d at 145, we hold that the defendants were on notice and had “fair warning” that retaliating against the plaintiffs for their support of the 1998 referendum would violate the plaintiffs' constitutional rights and, if the plaintiffs' allegations are true, would lead to liability under § 1983.

## IV.    CONCLUSION

For the reasons stated above, we conclude that, taking the facts in the light most favorable to the plaintiffs, the defendants' “conduct violated a constitutional right” and that “the right was clearly established.” *Saucier*, 533 U.S. at 201, 121 S. Ct. at 2156.  Accordingly, we affirm the order of the district court denying

summary judgment and denying the defendants qualified immunity from suit.

**AFFIRMED.**