[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 7, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-15616
Non-Argument Calendar

_____

D. C. Docket No. 04-14182-CV-DLG

DAVID PATTON KING,

Plaintiff-Appellee,

versus

BRUCE REAP,
in his individual and official capacities
as Deputy Sheriff of Indian River County,
ERIN BURKE,
in her individual and official capacities
as Deputy Sheriff of Indian River County,
et al.,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(March 7, 2008)**

Before ANDERSON, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Defendants Bruce Reap, Erin Burke, Robert Foress, William Teague, and Anthony Cosalo appeal the district court's denial of their motion for summary judgment. Appellants, all deputies with the Indian River Sheriff's Department, moved for summary judgment based on qualified immunity.

Plaintiff-Appellee David King brought suit under 42 U.S.C. § 1983, alleging that the Defendants had violated his constitutional rights by using excessive force against him during his arrest and/or failing to intervene in the use of excessive force. He also alleged that they showed deliberate indifference to his serious medical needs at the scene of the arrest.

The district court held that, taking the facts in the light most favorable to King, the Defendants used excessive force or failed to intervene when excessive force was being used. Under King's recitation of the facts, he was assaulted by Deputy Stoll and another deputy that he could not see; the rest of the named deputies watched and did nothing. King testified that he was stopped by Stoll for running a stop sign. Upon stopping his car, King placed a baggie containing crack cocaine in his mouth. When Stoll attempted to ask King questions, King refused to talk or identify himself. Stoll instructed King to open his mouth but King refused, so Stoll handcuffed King behind his back. After being handcuffed, King

2

still refused to comply with Stoll's order so Stoll allegedly grabbed King's mouth and slammed him to the ground. King testified that Stoll beat him in the back with a flashlight while attempting to open his mouth. It was during this time, when King was on the ground on his back with Stoll on his legs, that an unidentified deputy arrived on the scene. King testified that the two deputies ground his face into the ground while trying to pry his mouth open. One of the two pepper-sprayed him and then forced a metal object into King's mouth, which sliced the interior of his mouth and tongue, chipped a tooth, and caused swelling in his lips.

Paramedics arrived to treat King after the cocaine was removed but one of the Defendants instructed them to leave before any first aid was administered. King was then taken to the hospital, where he declined treatment, allegedly because he feared that if he told the hospital staff what happened he would be treated worse by the Defendants. King alleges that Stoll did not inform the jail or put in the arrest report that he had taken King to the hospital. He also alleges that Stoll omitted from the arrest report that the paramedics arrived, that pepper spray was used, or that a metal tool was used; the report falsely stated that King spat the cocaine out. Several days later, an examination at the jail revealed that King had two broken ribs; he asserts he also suffered soft tissue damage, severe bruising of his cheeks and face, various scratches and bruises, and the effects of the pepper

3

spray.

We review de novo a trial court's denial of a motion for summary judgment on qualified immunity grounds. Bennett v. Hendrix, 423 F.3d 1247, 1249 (11th Cir. 2005). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Id. (quoting Fed.R.Civ.P. 56). Taken in the light most favorable to the party asserting injury, we first ask whether a constitutional violation occurred; we then ask whether the violation was already clearly established by the law at the time. Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2156 (2001). A narrow exception exists to the rule requiring particularized case law to establish clearly the law in excessive force cases. When an excessive force plaintiff shows "that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw," the official is not entitled to the defense of qualified immunity. Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 926 (11th Cir. 2000).

A. Excessive Force and the Fourth Amendment

We first examine whether the Appellants' use of force was excessive and

4

violated the Fourth Amendment. The standard for whether the use of force was excessive under the Fourth Amendment is one of "objective reasonableness." Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 1867-68, 104 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 1872.

Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," id. at 1872 (quoting Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861 (1979)) (alteration in original), we must "slosh our way through the factbound morass of 'reasonableness.'" Scott v. Harris, __ U.S. __, 127 S.Ct. 1769, 1778 (2007). Therefore, determining whether "the use of a particular type of force in a particular situation" is "reasonable" in the constitutional sense requires a court to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Id. at 1777, 1778. The Court has also held that lower courts should factor into the calculus of reasonableness the severity of the crime, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting or attempting to escape. Graham, 490 U.S. at 396, 109 S.Ct. at 1872.

5

Appellant Reap argues that because King had put a baggie of cocaine in his mouth, the amount of force that the deputies used to remove it was not excessive. He cites cases from other circuits where courts have held that a certain amount of force is acceptable when a suspect is concealing drugs within his body. In each of those cases he cites, however, the amount of force used was significantly less than that allegedly used here and does not affect the reasonableness inquiry that we must make.

Here, when we examine the facts as alleged by King, the amount of force used was not reasonable. Unlike the cases cited by Appellants, King was not merely "manhandled": he was beaten, while handcuffed, to the extent that two or possibly three of his ribs were broken. Furthermore, according to King, he was not attempting to escape or violent; indeed, King was charged with nonviolently resisting arrest. This also was not a case where a split-second decision had to be made: the beating, according to King, took at least five minutes.

Appellant Consalo argues that the court below erred because it did not analyze whether King's testimony proves that Consalo's precise conduct violated King's constitutional rights. However, this Court does not require that each individual defendant's actions must be analyzed in an excessive force case. Velazquez v. City of Hialeah, 484 F.3d 1340, 1342 (11th Cir. 2007) (rejecting

6

award of qualified immunity because plaintiff did not know which officer administered the beating; who administered the beating, and whether or not it was excessive are questions for the jury).

There is no question that the Appellants had fair warning that their actions violated King's cnostitutional rights. The beating, as described by King, falls within "the core of what the Fourth Amendment prohibits": a severe beating of a restrained, non-resisting suspect. See generally Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002).

B.  Failure to Intervene

The Appellants argue that they are entitled to qualified immunity on the claim of failure to intervene in the use of excessive force against King. An officer can be liable for failing to intervene when another officer uses excessive force. Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 924 (11th Cir. 2000) (citing Ensley v. Soper, 142 F.3d 1402, 1407-08 (11th Cir. 1998). This liability, however, only arises when the officer is in a position to intervene and fails to do so. See Ensley, 142 F.3d at 1407 ("[F]or an officer to be liable for failing to stop police brutality, the officer must be in a position to intervene[.]").

In Priester, we held that two minutes of a dog biting a suspect was long enough for another officer to intervene. Here, King testified that the deputies who

arrived on the scene later were there for his arrest and beating; each of the deputies testified that they witnessed the beating. He also alleged that the beating took place for about twenty minutes. Therefore, each Appellant had the opportunity to observe that a handcuffed, non-violent suspect was being beaten but failed to intervene, violating his constitutional rights.

## C. Deliberate Indifference Claim

The Appellants argue that the district court should have granted them qualified immunity on King's deliberate indifference to medical needs claim. King testified that an ambulance was called to the scene of his arrest but that the Appellants sent the ambulance away without letting King speak to them. Furthermore, King argues that although the deputies later took him to the hospital, this did not constitute providing prompt attention to his medical needs as required by our caselaw. Additionally, their purpose was to have him cleaned up, not treated, as demonstrated by the fact that they did not report the hospital visit in their report of the arrest.

This Court has held that the denial of prompt and proper medical care to a pretrial detainee violates the detainee's due process rights. Thomas v. Town of Davie, 847 F.2d 771, 772 (11th Cir. 1988). In that case, the plaintiff argued that he

was demonstrably injured and yet the police did not provide him with medical care, although they handcuffed him, administered a negative sobriety test, and transported him to the jail. Once there, he was released onto the street outside of the Sheriff's Office after he posted bond; he collapsed and was injured. Here, King had been pepper-sprayed and according to Indian River County Sheriff Officer policy, should have been decontaminated. However, the ambulance, although summoned, was sent away without a chance to examine or assist King. Furthermore, the beating and spray had produced on King a swollen cheek, swollen and severely bloodshot eyes, a bruised face, lacerations in his mouth, chipped teeth, soft tissue swelling, and broken ribs. While the broken ribs were not visible to a lay person, the other injuries were apparent and it is reasonable to expect that someone subjected to a twenty-minute beating would be in need of medical attention. Additionally, the very summoning of the ambulance demonstrates that the Appellants knew that King was in need of medical attention. However, the sending away of the ambulance and the resulting delay in medical attention did violate King's constitutional rights, as demonstrated in Thomas.

The decision of the district court is

**AFFIRMED.**