[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 19, 2011
JOHN LEY
CLERK

No. 11-10029
Non-Argument Calendar
_____

D.C. Docket No. 3:08-cv-00063-WS-MD

DANIEL R. THOMPSON,
CATHY A. THOMPSON,

Plaintiffs - Appellees,

versus

WENDELL HALL,
in his official capacity as Sheriff of
Santa Rosa County, Florida,
JERRY D. UTSEY,
In his individual capacity,

Defendants - Appellants,

JIM COATS,
in his official capacity as Sheriff
of Pinellas County, Florida, et al.,

Defendants.

Appeal from the United States District Court
for the Northern District of Florida

———————————————

(May 19, 2011)

Before CARNES, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Defendants Sheriff Wendall Hall and Deputy Sheriff Jerry Utsey appeal from the district court's denial of their motion to dismiss Count VIII of Plaintiffs' Third Amended Complaint based on the defense of qualified immunity. After review, we reverse and remand.

## I. BACKGROUND

### A. Third Amended Complaint

On February 15, 2008 Plaintiffs Daniel and Cathy Thompson filed this lawsuit pursuant to 42 U.S.C. §§ 1983 and 1988, alleging violations of the First, Fourth, and Fourteenth Amendments. Their Third Amended Complaint names six defendants: (1) Sheriff Wendell Hall, individually and in his official capacity as Sheriff of Santa Rosa County, Florida, and three Santa Rosa County deputies, Aaron A. Jasper, John Younghanse, and Jerry D. Utsey, all individually; and (2) Sheriff Jim Coats, in his official capacity as Sheriff of Pinellas County, Florida,

2

and one Pinellas County Deputy, Richard Farnham, individually.

Plaintiffs' Third Amended Complaint contains ten counts, including two state law claims and eight claims under 42 U.S.C. § 1983. Most of the counts are against only one of the defendants, but all counts relate to the events on the night of September 20, 2004, when police, including Defendant Pinellas County Deputy Farnham, arrested Plaintiff Daniel Thompson and his neighbor, Ed Knowling, in their neighborhood.

The only claim on appeal is the § 1983 claim in Count VIII, which alleges Defendants Santa Rosa County Sheriff Hall and Deputy Utsey violated Plaintiffs' First Amendment rights. We recite the factual allegations pertaining to Count VIII as against Defendants Hall and Utsey.

**B.     Allegations in Count VIII**

On January 20, 2005, Defendant Sheriff Hall hosted a town hall meeting in Gulf Breeze, Florida. Sheriff Hall introduced himself, made some remarks, and opened the floor to questions.

During the 2005 meeting, Plaintiff Daniel Thompson asked Sheriff Hall "if he was doing anything about his case." Thompson "went on to describe his case as involving him being beaten and tased by a Pinellas County Deputy [Farnham] after [H]urricane Ivan." Pinellas County Deputy Farnham was later convicted of

3

violating Daniel Thompson's civil rights and was sentenced to 12 months in federal prison for using unreasonable force against Thompson.  See United States v. Farnham, No. 3:06-CR-456-RV (N.D. Fla. Apr. 24, 2007) (final judgment order).

Sheriff Hall stated he knew nothing about the case.  "Defendant Sheriff Hall hastily turned around and told Deputy Steve Collier to 'deal with this.'"  After the meeting, news media published articles about Plaintiff Thompson's confrontation of Sheriff Hall.  Sheriff Hall told the media he had looked into the case.

Plaintiffs claim that because Daniel Thompson and Ed Knowling confronted Defendant Sheriff Hall at the town hall meeting, "Defendant Sheriff Hall ordered Defendant Utsey to re-open the investigation to bring new criminal charges against Daniel Thompson."  Defendant Sheriff Hall, through Deputy Collier, ordered "Defendant Utsey . . . to record all of the interviews and have the investigation finished before a date certain."  According to Plaintiffs, Deputy Collier ordered Deputy Utsey to "make [the] charges stick."

After the media stories about the meeting were published, Sheriff Hall initiated a supervisor's inquiry into whether the Thompsons and Knowling were victims of abuse by police.  Santa Rosa Sheriff Deputy Tomlinson was assigned the task of investigating the allegations of police misconduct.  However, according

4

to Plaintiffs, Defendant Utsey was told to focus on the criminal case against Daniel Thompson and Knowling.

In March 2005, Defendant Deputy Utsey interviewed Defendant Deputy Farnham. Plaintiffs claim that although "Defendant Utsey felt that Defendant Farnham's story [regarding what happened on the evening of September 20, 2004] was not true," Utsey "did not notify his chain of command nor did he incorporate the inconsistencies into his supplemental report." Defendant Utsey interviewed other officers on the scene that night, but according to Plaintiffs, "avoided asking any questions about whether there was any misconduct on the night in question" and "intentionally avoided any issues about police misconduct."

Defendant Utsey's summary of the witness statements was incorporated into a supplement to the offense report from the night of the arrests. Plaintiffs allege Utsey's supplemental offense report failed to summarize accurately the witness statements.

Defendant Sheriff Hall then gave Utsey's supplemental offense report to the State Attorney, allegedly in order to persuade the State Attorney to prosecute Daniel Thompson.

Plaintiffs further allege that "[d]uring the period between October 2004 and March 17, 2005, [they] observed an exponential increase in the presence of the

5

Santa Rosa County Sheriff's department. Deputies would drive by their properties, stop, and point at their homes." Cathy Thompson also "observed deputies following her to and from work."[1]

Plaintiffs further allege that although Defendant Sheriff Hall learned through his chief deputy that there were complaints about his deputies harassing witnesses, he did nothing to follow up on such complaints.

## C. District Court's Order

Defendants Hall and Utsey jointly moved to dismiss Count VIII, claiming qualified immunity. On December 6, 2010, the district court denied Hall's and Utsey's joint motion. Hall and Utsey now appeal the district court's denial of their motion to dismiss Count VIII.[2] All other counts in the Third Amended Complaint remain pending.

## II. DISCUSSION

## A. Qualified Immunity Principles

---

[1]The Third Amended Complaint contains allegations that Utsey harassed an unnamed neighbor and that deputies followed Barbara Knowing to and from work, but neither the unnamed neighbor nor Barbara Knowing is a plaintiff in this case.

[2]"The denial of absolute or qualified immunity on a motion to dismiss is an appealable interlocutory order." Rehberg v. Paulk, 611 F.3d 828, 837 n.5 (11th Cir. 2010), cert. granted, 79 U.S.L.W. 3377, 79 U.S.L.W. 3532, 79 U.S.L.W. 3538 (U.S. Mar. 21, 20011) (No. 10-788, 10A341). "We review de novo the district court's denial of a motion to dismiss on the basis of absolute or qualified immunity." Id.

"Qualified immunity shields government officials who perform discretionary governmental functions from civil liability so long as their conduct does not violate any 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Rehberg v. Paulk, 611 F.3d 828, 838 (11th Cir. 2010) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)), cert. granted, 79 U.S.L.W. 3377, 79 U.S.L.W. 3532, 79 U.S.L.W. 3538 (U.S. Mar. 21, 20011) (No. 10-788, 10A341).[3]

"To evaluate claims of qualified immunity, the Court considers whether (1) the plaintiff has alleged a violation of a constitutional right; and (2) whether the right was 'clearly established' at the time of the defendant's misconduct." Rehberg, 611 F.3d at 838-39. These questions are answered in whatever order is most appropriate for the case. Pearson v. Callahan, 555 U.S. 223, __, 129 S. Ct. 808, 821 (2009).

"In order to determine whether a right is clearly established, we look to the precedent of the Supreme Court of the United States, this Court's precedent, and the pertinent state's supreme court precedent, interpreting and applying the law in similar circumstances." Oliver v. Fiorino, 586 F.3d 898 (11th Cir. 2009).

---

[3]"[O]nly qualified immunity, not absolute immunity, applies to conduct taken in an investigatory capacity as opposed to a prosecutorial capacity." Rehberg, 611 F.3d at 850.

**B.    Count VIII**

In Count VIII, Plaintiffs allege that Defendants Sheriff Hall and Deputy Utsey initiated and carried out an investigation against them in retaliation for Daniel Thompson's comments at the town hall meeting.  Such allegations do not establish a constitutional violation.  "The initiation of a criminal investigation in and of itself does not implicate a federal constitutional right."  Rehberg, 611 F.3d at 850 n.24.  Therefore, "[n]o § 1983 liability can attach merely because the government initiated a criminal investigation."  Id.  As we stated in Rehberg, "The Supreme Court has never defined retaliatory investigation, standing alone, as a constitutional tort, and neither has this Court."  Id. at 850 (citation omitted).

Alternatively, in Rehberg the conduct in issue occurred from October 2003 to February 2004.  Id. at 835.  In Rehberg we reversed the district court's denial of qualified immunity, concluding that even assuming that a retaliatory investigation is a constitutional violation, the "right to be free from a retaliatory investigation is not clearly established."  Id. at 850-51.  Thus, Defendants Sheriff Hall and Deputy Utsey are entitled to qualified immunity insofar as Plaintiffs have alleged they carried out an investigation in 2005 in retaliation for Plaintiff Daniel Thompson's comments at the town hall meeting.

We recognize that Plaintiffs argue that the allegations in this case involve

8

not just retaliatory investigation, but a campaign of harassment and intimidation against Plaintiffs to retaliate against them for Daniel Thompson's comments at the town meeting and to deter them from filing a civil suit.

"To state a retaliation claim, . . . a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005). As to the second prong, "[a] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Id. at 1254. "Among many other acts of intimidation" in Bennett, the plaintiffs alleged "[1] the defendants took down license tag numbers of cars at a forum in support of the referendum, [2] surveilled the plaintiffs' homes and businesses, [3] set up roadblocks near their homes, [4] stopped their cars without reason and issued false traffic citations, [5] accessed government databases to obtain confidential information on the plaintiffs, [6] attempted to obtain a warrant for their arrest on trumped-up environmental charges, and [7] mailed flyers to 35,000 homes in Forsyth County calling the plaintiffs the 'real criminals,' members of a 'chain gang,' and 'the same type of

9

criminals that terrorize Forsyth County.'" Id. at 1249. In Bennett, we noted that "[t]he alleged retaliatory acts complained of . . . include a prolonged and organized campaign of harassment by local police officers," and that "the record is replete with instances where the defendants followed, pulled over, cited, intimidated, or otherwise harassed the plaintiffs." Id. at 1254. Given these allegations, in Bennett we concluded that the plaintiffs had sufficiently alleged a violation of their First Amendment rights by virtue of the defendants' retaliatory conduct. Id. at 1255-56.

In contrast to Bennett, the only allegations of harassment or intimidation in the Third Amended Complaint are: (1) Defendant Deputy Utsey allegedly questioned an unnamed neighbor, who is not a party to this case, in an intimidating manner, (2) unnamed Santa Rosa County Sheriff Deputies followed Cathy Thompson and Barbara Knowling to and from work, (3) the number of unidentified deputies in the Thompsons' neighborhood increased, and such deputies would drive by, stop, and point at homes in the neighborhood, and (4) Defendant Sheriff Hall heard reports of witness intimidation by deputies but did nothing to stop it.[4] These allegations either implicate unnamed deputies or involve

---

[4]Plaintiffs also allege that unnamed members of the Santa Rosa Sheriff's Office started a petition to keep Daniel and Cathy Thompson from docking their boat at a neighbor's house and told the Thompsons' neighbors that Daniel Thompson "tried to kill deputies." Because Plaintiffs give no names for these members of the Sheriff's Office, we do not consider these allegations as against Hall or Utsey.

10

harassment that was directed at persons other than Plaintiffs. As such, they do not establish an alleged constitutional violation by Defendants Hall and Utsey. Moreover, it was not clearly established, at the time of the 2005 actions alleged in the Third Amended Complaint, that any of the alleged actions of Hall or Utsey would deter a person of ordinary firmness from engaging in protected speech. The actions alleged here involve nowhere near the same level of harassment and intimidation, for as prolonged a period of time, as was present in <u>Bennett</u>.

For all of these reasons, we reverse the district court's denial of Hall and Utsey's joint motion to dismiss Count VIII and remand with instructions that Count VIII be dismissed against Defendants Hall and Utsey.

**REVERSED AND REMANDED.**