[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10792
Non-Argument Calendar
_____

D.C. Docket No. 4:13-cv-00549-MW-GRJ

CONRAAD L. HOEVER,

Plaintiff-Appellee-Cross Appellant,

versus

C. CARRAWAY,
Correctional Officer, et al.,

Defendants,

R. MARKS,
Correctional Officer,
C. PAUL,
Correctional Officer Sergeant,

Defendants-Appellants-Cross Appellees.

_____

Appeals from the United States District Court
for the Northern District of Florida
_____

(July 7, 2020)

Before JORDAN, NEWSOM and BLACK, Circuit Judges.

PER CURIAM:

Appellants Robert Marks and Caleb Paul, two correctional officers with the Florida Department of Corrections (FDC), appeal the verdict in a 42 U.S.C. § 1983 action brought by Appellee Conraad Hoever. Hoever's § 1983 action was based on alleged violations of his First Amendment and Fourteenth Amendment due process rights. Among other relief, Hoever sought injunctive relief, along with compensatory and punitive damages.

Prior to trial, the district court dismissed Hoever's claims for compensatory and punitive damages, for violation of due process, and for declaratory and injunctive relief, as well as all of Hoever's claims against the defendants in their official capacities. By the beginning of trial, only Hoever's First Amendment claims for nominal damages remained. Following a three-day trial, the jury returned a verdict in Hoever's favor, finding Marks and Paul had violated Hoever's constitutional rights and awarding Hoever nominal damages of $1.00.

Marks and Paul appealed, arguing the district court erred when it: (1) denied their motions for judgment as a matter of law; (2) denied their motion for a new trial; and (3) erroneously instructed the jury as to what constitutes an "adverse action" for purposes of a First Amendment claim. Hoever cross appealed, challenging: (1) the district court's dismissal of his punitive damages claims at the

2

motion to dismiss stage; and (2) the district court's vacatur of its order granting Hoever's motion to dismiss his damages claims without prejudice.

After review, we affirm the district court's judgment in its entirety.

## I. BACKGROUND

### A. *The Complaint and Motion to Dismiss*

In September 2013, Hoever, proceeding *pro se*, filed a complaint, which he subsequently amended, initiating the instant § 1983 action against certain correctional officers employed by the FDC, including Appellants Marks and Paul. At the district court's direction, Hoever filed a Second Amended Complaint, which is now the operative complaint. The Second Amended Complaint alleged that throughout the summer of 2013, while Hoever was an inmate at the Franklin Correctional Institution (FCI) in Carrabelle, Florida, four correctional officers—C. Carraway, R. Marks, J. Nunez, and C. Paul—subjected him to harassment and threats of physical violence and death in retaliation for filing grievances and to deter him from filing future grievances.[1] The complaint alleged claims for violations of Hoever's rights under the First Amendment and the Fourteenth Amendment's Due Process Clause. He sought injunctive relief, and compensatory and punitive damages, among other relief.

---

[1] Carraway was later dismissed, and the claims proceeded against Nunez and Appellants Marks and Paul. Nunez, Marks, and Paul filed a joint notice of appeal following the entry of judgment, but Nunez was subsequently voluntarily dismissed from this appeal.

Appellants filed a motion to dismiss the claims against them, which the district court granted in part, disposing of all Hoever's claims except certain First Amendment claims for nominal damages. As relevant to this appeal, the district court dismissed Hoever's claims for punitive and compensatory damages as barred by the Prison Litigation Reform Act (PLRA), noting that while the PLRA does not preclude an award of nominal damages if a plaintiff establishes the violation of a constitutional right, it does prohibit a prisoner from bringing a federal civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

Following the district court's denial of Appellants' motion for summary judgment, the case proceeded to trial.

*B. The Trial*

At the trial, the jury heard testimony concerning three separate occasions on which Marks and Paul threatened Hoever after he had filed grievances complaining about his treatment by various FDC officers.[2] The first incident occurred on June 20, 2013. Prior to that date, Hoever had filed several grievances against certain

---

[2] The jury also heard testimony about two additional occasions on which Hoever was threatened by Nunez, who has since been dismissed from this appeal. Overall, Nunez's statements were more severe than those of Appellants. For example, Nunez told Hoever "we've been killing inmates here for a long time and nobody can do a damn thing to us," and he threatened to "take [Hoever] to confinement and starve [him] to death" if he filed any more grievances.

4

correctional officers.  On June 20, Marks and Paul approached Hoever, and Marks stated the following, while Paul stood nearby:

> If you keep on writing grievances, I promise you the next 11 years is going to be a heartache for you. You need to stop writing grievances right now or we'll make sure that you stop.  If you don't want to stop on your own, then we will make you stop. . . . I want you to promise that you are not going to write another grievance.  If you write another grievance, . . . I'll take you right now to confinement. . . . I'll let you go only if you promise never to write a grievance again.

Marks and Paul denied any wrongdoing, though Paul, at least, confirmed he was assigned to Hoever's dorm on that date.

The second incident occurred on June 29, 2013.  According to Hoever, despite Marks' warning, he had filed another grievance concerning the threatening conduct of Marks and Paul on June 20.  On June 29, Marks and Paul again approached Hoever, who was in his bunk.  Again, Paul stood back while Marks said to Hoever, "I saw your letter you write.  And I will see you."  Marks and Paul, again, denied they had threatened Hoever.

The third incident occurred on August 20, 2013, and involved only Paul. Hoever testified that Paul went to Hoever's dorm at 2:00 a.m. with two other officers, woke him, and asked him, "Why did you write grievances on me?"  This was after Hoever had filed at least one additional grievance recounting threatening conduct by Marks and Paul.  At the time, Hoever was serving time in solitary

5

confinement based on disciplinary action unrelated to this lawsuit.  Paul denies he entered the dormitory and threatened Hoever on that date.

Hoever also offered testimony from two other inmates—Darian James and George Rivera—who confirmed they had observed certain interactions between Hoever and Appellants.  In particular, Rivera recalled Paul and Marks "threatening" Hoever and telling him "they would take care of [him]" and "put [him] in confinement" because of his grievances.

*C. Motions for Judgment as a Matter of Law*

At the close of Hoever's evidence, and again at the close of the defendants' evidence, Marks and Paul moved for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50, arguing Hoever had failed to present evidence showing the alleged retaliatory conduct Marks and Paul engaged in was sufficiently severe to constitute an "adverse action" against him.  The district court denied both motions, concluding Hoever's testimony provided sufficient evidence to support his claims against Marks and Paul, and that the law was clearly established such that Marks and Paul would have been aware their conduct, as described by Hoever, violated the Constitution.

*D. Jury Instructions & Verdict*

During the charge conference, Marks and Paul objected to the district court's proposed instruction on what constitutes an "adverse action." The relevant instruction, as read by the district court, is as follows:

> Mr. Hoever must prove there is a causal connection between the retaliatory actions and the adverse effect on speech. A plaintiff suffers adverse action if the defendants' allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of his First Amendment rights.

Marks' and Paul's requested instructions included similar language concerning whether the defendants' actions would have deterred a person of ordinary firmness, but they also requested the following additional instruction regarding that element:

> [T]he plaintiff must show that the actions of the defendant(s) resulted in more than a minimal inconvenience to the exercise of his First Amendment rights. Examples of retaliatory conduct include punishment in the form of discipline or unjustified use of force, or a prolonged and organized campaign of harassment.

After the jury deliberated, it returned a verdict in Hoever's favor, specifically finding that: (1) Marks and Paul violated Hoever's First Amendment rights on June 20, 2013; (2) Marks and Paul violated Hoever's First Amendment rights on June 29, 2013; and (3) Paul violated Hoever's First Amendment rights on August 20, 2013. The jury awarded Hoever $1.00 in nominal damages.

Following the jury's verdict, Marks and Paul filed an amended motion for new trial, pursuant to Federal Rule of Civil Procedure 59, arguing the verdict was

7

against the great weight of the evidence and resulted in a miscarriage of justice.

The district court denied the motion, concluding the case came down to whose

testimony the jury credited—"an old fashioned swearing match."  The court found

that, contrary to Appellants' arguments, Hoever's "version of events was neither

improbable nor impossible."  Following the entry of judgment against them, Marks

and Paul appealed.

*E. Final Judgment*

The district court initially entered judgment in Hoever's favor on September

23, 2016.  The judgment stated that "Judgment is entered for the Plaintiff against

Defendants in the amount of One Dollar ($1.00)."  Subsequently, Hoever moved

the district court to dismiss without prejudice his damages claims for mental and

emotional injuries, which had been disposed of at the motion-to-dismiss stage.

Appellants did not object to Hoever's request, and the district court entered an

order granting Hoever's motion to dismiss his damages claims without prejudice.[3]

However, the district court subsequently entered a new order vacating its

prior order and dismissing Hoever's damages claims with prejudice.  The district

court noted it had misapprehended Hoever's motion, and now understood Hoever

implicitly to be requesting permission to "revisit" and "refile" his request for

---

[3] The district court also granted, in the same order, Hoever's motion to award him costs. At the district court's direction, the Clerk entered judgment awarding costs, which it subsequently amended.

8

damages after he is released from prison, which the district court concluded he would not be permitted to do.  In any case, the district court noted, Hoever's damages claims had already been dismissed by court order earlier in the litigation, so the motion was moot to the extent it requested dismissal of those claims. Hoever filed a motion to reinstate the earlier order granting his motion, which the district court denied.  Hoever then filed a cross appeal, challenging that ruling as well as the district court's dismissal of his punitive damages claims at the motion-to-dismiss stage.  Hoever's cross appeal was consolidated with Marks' and Paul's prior appeal from the judgment against them.

On appeal, Hoever sought and was granted leave to proceed *in forma pauperis*.  A judge of this court subsequently granted Hoever's motion for appointment of counsel, and he has since been ably represented on appeal by two attorneys from Alston & Bird LLP.

## II.  DISCUSSION

### A. *Punitive Damages*

Hoever argues the district court erred in dismissing his claims for punitive damages as barred by the PLRA, 42 U.S.C. § 1997e(e).  Hoever insists the PLRA's

bar on damages claims does not apply to him because he sought punitive damages based on more than just mental and emotional injury.[4]

The PLRA places certain restrictions on a prisoner's ability to seek judicial relief in the form of civil lawsuits for certain injuries suffered while in custody. Among these restrictions is 42 U.S.C. § 1997e(e), which is entitled "Limitation on recovery" and provides in full: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).

This Court has interpreted that provision as preventing a prisoner from recovering compensatory or punitive damages, even for constitutional violations unless he can show that he suffered a physical injury.  *See Al-Amin v. Smith*, 637 F.3d 1192, 1199 (11th Cir. 2011).  Further, we have held that, "in order to satisfy section 1997e(e) the physical injury must be more than de minimis, but need not be significant."  *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir.), *op. reinstated in relevant part on reh'g en banc*, 216 F.3d 970 (11th Cir. 2000).  Thus, Hoever would only have been entitled to punitive damages if he were able to show

---

[4] We review "*de novo* a district court's order granting a motion to dismiss for failure to state a claim." *Boyle v. City of Pell City*, 866 F.3d 1280, 1286 (11th Cir. 2017).  The interpretation of a federal statute is a question of law that we review *de novo. Al-Amin v. Smith*, 637 F.3d 1192, 1195 (11th Cir. 2011).

he suffered some form of physical injury as a result of Marks' and Paul's alleged constitutional violations.

Hoever's complaint alleged he suffered "physical injuries, personal humiliation, mental anguish, physical and mental intimidation, blemish to his prison record, impairment of his reputation, permanent defamation, and irreparable harm now and in the future" as the result of Appellants' actions. The only one of these allegations that would remove Hoever's punitive damages claims from the PLRA's damages bar is the allegation he suffered "physical injuries" as a result of Marks' and Paul's actions. However, a close reading of Hoever's Second Amended Complaint reveals no specific factual allegation that Marks' or Paul's actions resulted in any physical injury to Hoever. Instead, the complaint's allegations almost exclusively concern Marks' and Paul's *threats* of violence and punishment.

To the extent Hoever argues that § 1997e(e)'s plain language referring to "mental or emotional injury" limits the PLRA's damages bar to a narrow set of claims that does not include certain constitutional claims, this is contrary to our precedent. *See Al-Amin*, 637 F.3d at 1196; *see also Harris*, 216 F.3d at 984–85 ("Section 1997e(e) unequivocally states that '*No* Federal Civil Action may be brought . . . ,' and 'no' means no. The clear and broad statutory language does not

11

permit us to except any type of claims, including constitutional claims." (citation omitted) (alteration in original)).[5]

Accordingly, we affirm the district court's dismissal of Hoever's punitive damages claims, pursuant to § 1997e(e) of the PLRA.

## B. Sufficiency of the Evidence

Marks and Paul argue the district court erred in denying their motions for judgment as a matter of law and new trial on the ground that Hoever failed to establish any violation of his constitutional rights.[6] To state a First Amendment retaliation claim, a plaintiff must establish the following three elements: (1) his speech or act was constitutionally protected; (2) the defendants' retaliatory conduct adversely affected the protected speech; and (3) there is a causal connection between the retaliatory actions and the adverse effect on speech. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).

---

[5] To the extent his punitive damages claims fail under this Court's extant precedent, Hoever invites us to reconsider our position that punitive damages generally are not available to prisoners whose constitutional rights are violated without physical injury. Even were we persuaded by Hoever's arguments, however, "[u]nder the prior precedent rule, we are bound to follow a prior binding precedent unless and until it is overruled by this Court en banc or by the Supreme Court." *United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008) (quotation marks omitted).

[6] We review "a district court's denial of a motion for judgment as a matter of law *de novo*," reviewing all evidence "in a light most favorable to the nonmoving party." *Williams v. Dresser Indus., Inc.*, 120 F.3d 1163, 1167 (11th Cir. 1997). And we review a district court's ruling on a motion for new trial for abuse of discretion. *United States v. Sweat*, 555 F.3d 1364, 1367 (11th Cir. 2009).

The prong at issue here is the second one: whether Marks' and Paul's retaliatory conduct (as described by Hoever through his trial testimony) constituted an "adverse action." This Court has adopted the following standard for determining when a plaintiff like Hoever has suffered adverse action: "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* at 1254. The "ordinary firmness" standard recognizes that "government officials should not be liable when the plaintiff is unreasonably weak-willed or suffers only a *de minimis* inconvenience to h[is] exercise of First Amendment rights." *Id.* at 1252 (quotation marks omitted).

Marks and Paul argue their actions, as described by Hoever, did not rise to the level of an adverse action, implying the threats described by Hoever are too vague and non-specific to constitute an adverse action. They assert any effect their intimidation might have on "a person of ordinary firmness" would be *de minimis*.[7] We disagree. According to Hoever, Marks and Paul, on multiple occasions, and in response to his previous filing of grievances against various prison officials, intimidated Hoever and threatened to "make sure" Hoever would stop filing

---

[7] Marks and Paul also argue the weight of the evidence was against the jury's verdict, arguing the jury could not possibly have accepted Hoever's version of events given the contrary evidence put on by the defense. But the jury was entitled to weigh the credibility of witnesses, and we will not second guess the jury's decision to credit Hoever's testimony over that of the defense witnesses.

grievances and to take retaliatory action (such as sending Hoever to confinement) if he continued to do so. When Hoever continued to file grievances, Marks, Paul, and other correctional officers continued to intimidate him. The evidence shows that these threats, vague though some of them may have been, were part of a "prolonged . . . campaign of harassment" by several correctional officers. *See id.* at 1254.

In this respect, it is important to consider Marks' and Paul's actions in proper context. *See id.* at 1252 (noting that whether a particular retaliatory act constitutes an "adverse action" "depends on context"). While Nunez has been dismissed from this appeal, and thus the specific claims against him are not directly at issue, it is impossible to assess the effect of Marks' and Paul's actions would have on a person of ordinary firmness without acknowledging those actions were part of a series of ongoing threats, including specific threats of starvation and death by Nunez.

Another critical piece of context in this case is the relationship between the speaker and the retaliators, and the respective status of each. *See id.* ("Determining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts."). Here, the effect of the threats by Marks and

14

Paul—again, even if somewhat vague—is compounded due to the degree of control they exercise over prisoners like Hoever who they oversee.

Accordingly, we conclude the jury had before it sufficient evidence from which it could have found Marks' and Paul's conduct "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *See id.* at 1254.

## C. Qualified Immunity

Marks and Paul also challenge the district court's denial of their Rule 50 motions for judgment as a matter of law on the ground they are entitled to qualified immunity. Qualified immunity protects government actors performing discretionary functions from being sued in their individual capacities. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999). The doctrine shields government officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It does not, however, offer protection "if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." *Id.* at 815 (quotation marks and emphasis omitted).

To conclude Marks and Paul are shielded by qualified immunity, we must answer two questions in the affirmative: (1) taken in the light most favorable to

Hoever, do the facts established at trial show Appellants' conduct violated a constitutional right; and (2) was the right "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). These questions may be answered in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

For the reasons discussed above, we readily conclude that the jury was entitled to find Marks' and Paul's actions, as described in Hoever's testimony, violated his First Amendment rights. Marks and Paul argue, however, that any such right is not clearly established under this Court's existing precedent. There are three primary ways in which a constitutional right can be clearly established: "(1) case law with indistinguishable facts . . . (2) a broad statement of principle within the Constitution, statute, or case law . . . or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291–92 (11th Cir. 2009). Notably, however, "judicial precedent with materially identical facts is not essential for the law to be clearly established." *Singletary v. Vargas*, 804 F.3d 1174, 1181 (11th Cir. 2015).

As discussed above, it is clearly established under our precedent that "[a] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett*, 423 F.3d at 1254. Marks and Paul do not dispute

16

this but argue they could not have been aware that issuing vague threats of disciplinary action would be sufficient to qualify as an adverse action. There can be little doubt, however, that explicit or implied threats of violence or punishment issued to prevent an inmate from exercising his right to free speech would violate the Constitution. *See, e.g.*, *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008) (plaintiff stated a claim for retaliation where he alleged he "was exposed to mental abuse, physical intimidation, harassment, and verbal threats of injury and punishment in retaliation for the grievance that he filed").

Because Hoever's right to be free from implied threats of violence or punishment in retaliation for filing grievances was clearly established, the district court did not err in declining to grant Marks' and Paul's motion for judgment as a matter of law based on qualified immunity.

*D. Jury Instructions*

Marks and Paul also challenge the district court's jury instruction on what constitutes an adverse action.[8] The district court provided an instruction that accords with the definition of that term this Court has adopted, informing the jury that "[a] plaintiff suffers adverse action if the defendants' allegedly retaliatory

---

[8] We review a district court's refusal to give a requested jury instruction for an abuse of discretion. *United States v. Trujillo*, 146 F.3d 838, 846 (11th Cir. 1998). However, we review *de novo* the question whether a jury instruction "misstate[s] the law or mislead[s] the jury to the prejudice of the party who objects." *United States v. Campa*, 529 F.3d 980, 992 (11th Cir. 2008).

17

conduct would likely deter a person of ordinary firmness from the exercise of his First Amendment rights." Marks and Paul insist this definition was insufficient, and that the district court should have provided a more detailed explanation or examples, such that the jury could have more readily distinguished between a true adverse action and those actions that would be insufficient to deter an ordinary prisoner from exercising his First Amendment rights.

As an initial matter, to the extent Marks and Paul argue the district court's jury instruction misstated the law, we reject this argument. *See United States v. Campa*, 529 F.3d 980, 992 (11th Cir. 2008). Regardless of whether the instruction could have included additional information, there is no contention that the language in the instruction the district court gave was an incorrect statement of the law. Indeed, it was lifted almost verbatim from the case that Marks and Paul themselves identify as the seminal case relating to adverse action. *See Bennett*, 423 F.3d at 1254.

Thus, our review is limited to whether the district court abused its discretion in declining to the give the additional instruction requested by the defendants. *See United States v. Trujillo*, 146 F.3d 838, 846 (11th Cir. 1998). The additional language Marks and Paul requested would have informed the jury that: (1) their actions resulted in more than a minimal inconvenience to the exercise of Hoever's First Amendment rights; and (2) provide examples of retaliatory conduct. While

18

these additional instructions may have been useful to the jury, we cannot say the district court abused its discretion in failing to give them.

This conclusion is bolstered by the Eleventh Circuit pattern jury instructions for First Amendment retaliation cases, which provide for an instruction on adverse action that is substantially similar to the one given by the district court here. *See* Pattern Civ. Jury Instr. 11th Cir. 5.1 (2020) (stating a plaintiff must prove, *inter alia*, that a defendant's retaliatory action "would likely deter a similarly situated reasonable person from engaging in similar" speech or conduct). A district court does not abuse its discretion when it gives a pattern jury instruction based on well-established Circuit precedent.

*E. Amended Judgment*

Hoever challenges what he characterizes as the district court's *sua sponte* amendment of the final judgment in this case. The actual order he challenges is the district court's vacatur of its order granting Hoever's post-judgment motion to dismiss his damages claims for mental and emotional injuries without prejudice. He claims the district court was without jurisdiction to enter this order, as the order effectively amended the judgment and was filed more than 28 days after the entry of judgment. *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.").

19

As the district court noted, however, Hoever's original motion was moot at the time it was filed. Hoever's damages claims had already been dismissed by the district court's earlier order, yet Hoever later asked the district court to dismiss those same claims without prejudice. As a result, the challenged order, in which the district court vacated its prior order granting the motion to dismiss the claims, is not readily characterized as an amendment to the judgment. Indeed, no judgment, amended or otherwise, was ever entered explicitly stating Hoever's damages claims were dismissed without prejudice. We therefore reject Hoever's argument that the district court was without jurisdiction to vacate its prior order.[9]

## III. CONCLUSION

For the reasons discussed above, we affirm the underlying judgment against Marks and Paul. We also affirm the district court's dismissal of Hoever's damages claims.

**AFFIRMED.**

---

[9] We also note that Hoever's reason for seeking dismissal of his damages claims without prejudice is suspect. He claims he should be permitted to refile his damages claims following his release from prison, despite the fact he has already prevailed on the underlying First Amendment claims. As the district court noted, Hoever cannot fully litigate these claims and then later reassert them seeking a different remedy. Hoever points to *Harris v. Garner*, 216 F.3d 970 (11th Cir. 2008) in support of his position, but that case merely stands for the proposition that the PLRA's provisions would not bar a plaintiff who is no longer incarcerated from bringing suit in the first instance for mental or emotional injury suffered while in custody.

20